# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**A.A., BY AND THROUGH HIS MOTHER, P.A.; B.B., BY AND THROUGH HER MOTHER, P.B.; C.C., BY AND THROUGH HER MOTHER, P.C.; D.D., BY AND THROUGH HIS MOTHER, P.D.; AND E.E., BY AND THROUGH HIS MOTHER, P.E.**

**VERSUS**

**DR. COURTNEY N. PHILLIPS, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE LOUISIANA DEPARTMENT OF HEALTH, AND THE LOUISIANA DEPARTMENT OF HEALTH**

**CIVIL ACTION**

**NO.  3:19-CV-00770-BAJ-RLB**

**JUDGE BRIAN A. JACKSON**

**MAGISTRATE JUDGE SCOTT D. JOHNSON**

## DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

**NOW INTO COURT**, through undersigned counsel, come Defendants, Dr. Courtney N. Phillips, in her official capacity as Secretary of the Louisiana Department of Health, and the Louisiana Department of Health (collectively "Defendants"), who submit this *Memorandum in Opposition* to *Plaintiffs' Renewed Motion for Class Certification* (Doc. No. 51). Defendants aver that Plaintiffs, A.A., by and through his mother, P.A.; B.B., by and through her mother, P.B.; C.C., by and through her mother, P.C.; D.D., by and through his mother, P.D.; E.E., by and through his mother, P.E.; and F.F., by and through her mother, P.F. (collectively "Plaintiffs") cannot meet their burden under Rule 23 of the Federal Rules of Civil Procedure. The proposed class is not ascertainable and fails to satisfy the requirements of Rule 23(a) and Rule 23(b)(2). Therefore, *Plaintiffs' Renewed Motion for Class Certification* should be denied.

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

On November 7, 2019, Plaintiffs filed their *Original Complaint* (Doc. No. 1) and *Motion for Class Certification* (Doc. No. 2). On November 27, 2019, Plaintiffs filed their *First Amended Complaint* (Doc. No. 15) and added an additional plaintiff, namely, F.F. In this suit, Plaintiffs allege that Defendants fail to provide the "intensive care coordination, crisis services, and intensive behavioral services and supports" (collectively referred to by the Plaintiffs as "intensive home and community-based services" or "IHCBS"), required by the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) and Reasonable Promptness provisions of the Medicaid Act.[1] Plaintiffs further assert that Defendants' alleged failure to provide these IHCBS cause Plaintiffs and the putative class to be at "serious risk of unnecessary placement in hospitals and psychiatric institutions, in violation of Title II of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act of 1973."[2]

In response to the Plaintiffs' vague allegations, Defendants filed a *Motion for More Definite Statement Pursuant to Rule 12(e)* (Doc. No. 28) on December 18, 2019. On December 23, 2019, Defendants filed their *First Motion to Stay Class Certification Proceedings, or, in the alternative, Second Motion for Extension of Time to File Response* (Doc. No. 29)*, requesting an extension of time to file a response to the class certification proceedings pending resolution of the *Motion for a More Definite Statement Pursuant to Rule 12(e)* (Doc. No. 28). On December 30, 2019, the Court granted Defendants' *Motion for Extension of Time to File Response to the Motion for Class Certification* (Doc. No. 31).

---

[1] Doc. No. 51-2 at pp. 1-2. *See also* 42 U.S.C. §§ 1396d(r), 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B), and 1396a(a)(8)).

[2] Doc. No. 51-2 at p. 2. *See also* 42 U.S.C. § 12132; 29 U.S.C. § 794. Plaintiffs cite "29 U.S.C. § 794a" as the statutory reference for Section 504 of the Rehabilitation Act of 1973, which pertains to remedies and attorneys' fees. Defendants assert that the correct statutory reference for Section 504 of the Rehabilitation Act is 29 U.S.C. § 794.

Thereafter, the Court by *Order* signed June 23, 2020 (Doc. No. 43) granted Defendants' *Motion for a More Definite Statement Pursuant to Rule 12(e)* (Doc. No. 28) and ordered Plaintiffs to supplement their *First Amended Complaint* (Doc. No. 15). Subsequently, Defendants filed their *Answer and Affirmative Defenses* (Doc. No. 49) in response to Plaintiffs' *Second Amended Complaint* (Doc. No. 48). On August 31, 2020, the Court by *Order* (Doc. No. 50) set new deadlines to govern the briefing of the class certification issues.

Plaintiffs seek to certify a class of "all Medicaid-eligible youth under the age of 21 in the State of Louisiana who are diagnosed with a mental illness or condition, not attributable to an intellectual or developmental disability, and who are eligible for, but not receiving, necessary intensive home and community based (mental health) services."[3] Defendants now respond and adamantly oppose Plaintiffs' request for class certification.

## II.    LEGAL STANDARD FOR CLASS CERTIFICATION

The party seeking class certification bears the burden of proving all four requirements of Federal Rules of Civil Procedure Rule 23(a); namely, numerosity, commonality, typicality, and adequate representation.[4] In addition to meeting the requirements of Rule 23(a), a party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).[5] In this case, the Plaintiffs rely on Rule 23(b)(2), which provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

---

[3] Doc. No. 51 at p.1; Doc. No. 51-2 at p. 2.

[4] *Berger v. Compaq Computer Corp*., 257 F.3d 475, 479-80 (5th Cir. 2001).

[5] *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1428 (2013).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[6] Therefore, a party seeking class certification must affirmatively demonstrate his compliance with Rule 23.[7] Because class actions are the exception and not the rule, a district court must conduct a "rigorous analysis" of the Rule 23 prerequisites before certifying a class.[8] This requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case.[9] In other words, "[t]he plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification."[10] The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of Rule 23.[11]

## III.   LEGAL ANALYSIS

### A.      The proposed class is not ascertainable.

"The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."[12] "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." [13] The class "definition must be precise, objective, and presently

---

[6] *Wal-mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 99 S.Ct. 2545, 2557 (1979)).

[7] *Comcast Corp. v. Behrend*, 133 S.Ct. at 1432.

[8] *Id. See also Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2551 (quoting *General Telephone Co. of Southwest v. Falcon*, 102 S.Ct. 2364, 2372 (1982)).

[9] *M.D. v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (citing *McManus v. Fleetwood Enters.*, 320 F.3d 545, 548 (5th Cir. 2003)); *see also Funeral Consumers Alliance, Inc. v. Service Corporation International*, 695 F.3d 330, 345 (5th Cir. 2012).

[10] *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).

[11] *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 264 (5th Cir. 2007).

[12] *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

[13] *LeBlanc v. Exxon Mobil Corp.*, 2015 U.S. Dist. LEXIS 32533, at *11 (M.D. La. Mar. 17, 2015) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).

ascertainable."[14] Furthermore, "the order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)."[15] "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class."[16] The Fifth Circuit has held that where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings.[17]

1.  *Plaintiffs' reference to "intensive home and community based services" is vague and not an identifiable term.*

Throughout the pleadings, Plaintiffs refer to "intensive care coordination, crisis services, and intensive behavioral services and supports," or collectively, "intensive home and community based services" or "IHCBS."[18] Plaintiffs further allege that IHCBS are required by the EPSDT provisions of the Medicaid Act.[19] In actuality, under the EPSDT provisions of the Medicaid Act, Defendants are required to provide eligible children with "medically necessary" health care services.[20] "Medically necessary" means all services or treatments provided by the Medicaid Act

---

[14] *Colindres v. QuietFlex Mfg.*, 235 F.R.D. 347, 368 (S.D.Tx. 2006) (quoting MANUAL FOR COMPLEX LITIGATION §21.222 at 270 (4th ed. 2005)).

[15] *Plaza 22, LLC v. Waste Mgmt. of La.*, LLC, 2015 U.S. Dist. LEXIS 30405, at *9 (M.D. La. Mar. 12, 2015) (quoting MANUAL FOR COMPLEX LITIGATION §21.222 at 1 (4th ed. 2005)).

[16] *Id.* (quoting *James Wm. Moore et al.*, MOORE'S FEDERAL PRACTICE ¶ 23.21[3][c](3rd ed. 2007)).

[17] *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 670 (E.D. La. 2014) (quoting *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)).

[18] *See e.g.*, Doc. No. 51-2 at p. 1.

[19] *Id.*

[20] 42 U.S.C. § 1396a(a)(43)(C); 42 U.S.C. § 1396d(a)(4)(B); 42 U.S.C. § 1396d(r)(5). Each state participating in the Medicaid Program must provide for EPSDT services in their state plan as a mandatory category of medical assistance ("EPSDT mandate"). *See S.D. v. Hood*, 391 F.3d 581, 586 (5th Cir. 2004). The Medicaid Act, 42 U.S.C. § 1396 *et seq.*, describes EPSDT, as defined in 42 U.S.C. § 1396d(r), for individuals who are eligible under the state plan and are under the age of 21. 42 U.S.C. §§ 1396a(a)10(A), 1396d(4)(B). 42 U.S.C. § 1396d(r)(5) further defines EPSDT as the necessary treatment to correct or ameliorate defects and physical illnesses and conditions discovered by the screening services, whether or not such services are covered under a state plan.

that will "correct or ameliorate" any physical and mental illnesses and conditions.[21] The EPSDT provisions of the Medicaid Act do not require states to provide "IHCBS,"[22] nor is "IHCBS" a well-established Medicaid "term of art." Thus, it is important to note that the term "IHCBS" is advanced solely by the Plaintiffs and not the Defendants.

Plaintiffs' use of the term, "IHCBS" is relevant to the class certification proceedings because Plaintiffs have incorporated "IHCBS" into the proposed class definition. Specifically, Plaintiffs propose the following class definition: "[a]ll Medicaid-eligible youth under the age of 21 in the State of Louisiana who are diagnosed with a mental illness or condition, not attributable to an intellectual or developmental disability, and who are eligible for, but not receiving, necessary intensive home and community based (mental health) services."[23] Defendants urge the Court to reject this term as it relates to the pending class certification request, as neither federal nor state law require Defendants to specifically provide "IHCBS" to Medicaid recipients.[24] Moreover, Plaintiffs' reference to IHCBS is vague and does not clearly signal to Defendants the type of services that are allegedly lacking under the EPSDT mandate. Therefore, since "IHCBS" is a term created by Plaintiffs and not specifically required by the EPSDT mandate, a proposed class of Medicaid youths "eligible for, but not receiving, necessary intensive home and community based (mental health) services" is not an identifiable class.

In *Steimel v. Wernert*, the Seventh Circuit held that the district court did not err in denying class certification because the proposed class definition was too vague.[25] The *Wernert* Court noted

---

[21] 42 U.S.C. § 1396d(r)(5).

[22] Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, also known as the Medicaid Act and its corresponding federal regulations promulgated by the Centers for Medicare and Medicaid Services, 42 C.F.R. Ch. IV, Subch. C, Pt. 430, do not define or reference "intensive home or community based services" or "IHCBS."

[23] Doc. No. 51 at p.1; Doc. No. 51-2 at p. 2.

[24] *See generally,* 42 U.S.C. § 1396 *et seq*. and 42 C.F.R. Ch. IV, Subch. C, Pt. 430. *See also,* Title 50 of the Louisiana Administrative Code.

[25] 823 F.3d 902, 906 (7th Cir. 2016).

that vagueness in a proposed class definition must be avoided "because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment."[26] "Without knowing how to sort between those who were and those who were not deprived of services to which they were entitled, [the Court] would not be able to say who should receive notice, be bound by the judgment, and, if the class were to prevail on the merits, share in any recovery."[27] The Plaintiffs' vague and unidentifiable proposed class definition suffers similar defects as the proposed class definition in *Wernert* and, accordingly, should also not be certified.

    **2.  *Plaintiffs' proposed class definition is inadequate because it is impossible to identify each class member without extensive and individualized fact-finding.***

    Determining a child's eligibility for Medicaid and certain EPSDT services are inherently fact-specific inquiries. In order to be eligible for Medicaid, an applicant must be categorically and financially eligible. Thereafter, each Medicaid recipient's eligibility for a specific EPSDT services will turn on the individualized circumstances of each putative class member, such as the recipient's particular mental health condition(s), environment, and the recommendations of her physicians or licensed mental health professionals. When an EPSDT screening detects a problem in behavioral health, Medicaid-enrolled children receive coverage for all services necessary to "correct or ameliorate" the problem.[28] Therefore, an inquiry into the merits of each potential class member's claims would be necessary to determine whether an individual falls within the defined class. Plaintiffs' proposed class definition is not an objective measure that could gauge the persons included within the class. Consequently, the proposed class definition is not sufficiently

---

[26] *Id.* at 918 (quoting *Mullins v. Direct Dig., Ltd. Liab. Co*., 795 F.3d 654, 660 (7th Cir. 2015)).

[27] *Id.* at 918.

[28] 42 U.S.C. § 1396d(r)(5).

ascertainable as required by the Fifth Circuit.[29] "The need to conduct such individual inquiries to determine who qualifies as a member of the class undermines the administrative benefits of Rule 23."[30]

**B.    The proposed class fails to meet the standard for class certification under FRCP 23(a).**

    **1.    *Numerosity***

In considering whether a proposed class satisfies the numerosity requirement of Rule 23(a)(1), "[t]he proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors."[31] The Fifth Circuit has stated:

> The raison d'etre of the class suit doctrine is necessity, which in turn depends upon the question of number. The basic question is practicability of joinder, not number of interested persons per se. Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion.[32]

There are no definitive instructions or guidelines in terms of the number of purported class members required to satisfy the numerosity requirement.[33] For example, in *Garcia v. Gloor*, the Fifth Circuit affirmed the district court's denial of certification of a class comprised of only thirty-one (31) persons whose identity and addresses were readily ascertainable and who lived in a

---

[29] *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970).

[30] *LeBlanc v. Exxon Mobil Corp.*, 2015 U.S. Dist. LEXIS 32533, at *11 (M.D. La. Mar. 17, 2015) (quoting *In re Vioxx Products Liab. Litig*., 2012 U.S. Dist. LEXIS 78954, at p. 5 (E.D. La. 2012)).

[31]*Cooper v. Kliebert*, 2014 U.S. Dist. LEXIS 176220, at *5 (M.D. La. Dec. 22, 2014); *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981); *Zeidman v. J. Ray McDermott & Company*, 651 F.2d 1030, 1038 (5th Cir. 1981).

[32] *Garcia v. Gloor*, 618 F.2d 264, 271 (5th Cir. 1980) (citations omitted).

[33] Wright and Miller 7A Fed. Prac. & Proc. Civ. Section 1762 (3rd Ed.).

compact geographical area.[34] In this case, there are six (6) named plaintiffs, whose identities and Louisiana addresses, while under seal, are known to the parties and readily ascertainable.[35] Plaintiffs renewed motion attached two (2) affidavits, dated in November 2019, by the parents of non-named plaintiffs, D.A. and D.B.[36] The two non-named plaintiffs are Louisiana Medicaid beneficiaries who also allegedly suffer from mental health conditions.[37] Joinder of six (6) to eight (8) plaintiffs in Louisiana is practicable and manageable.

Moreover, the Court should place little credence in the Plaintiffs' estimated size of the proposed class of 47,500 Medicaid beneficiaries because Plaintiffs have not reasonably or accurately estimated the number of potential class members. Plaintiffs boldly assert the purported class consists "approximately 47,500 Louisiana Medicaid-eligible[38] children and youth under the age of 21" based on Louisiana Medicaid's 2018 Annual Report.[39] "To arrive at this number, Plaintiffs **estimated** the number of Medicaid-eligible children who need **specialized behavioral health services** in Louisiana."[40]  Plaintiffs misread the 2018 Annual Report and stated, "there are a total of 136,755 Medicaid beneficiaries of all ages enrolled in the state's five [managed care

---

[34] *Garcia v. Gloor*, 618 F.2d at 267.

[35] Doc. No. 21.

[36] Doc. No. 51-4 (Exhibit 2) and Doc. No. 51-5 (Exhibit 3).

[37] The legal guardian of D.C. also submitted an affidavit but D.C. is no longer a Louisiana resident or Louisiana Medicaid beneficiary and therefore, does not meet the proposed class definition. Doc. No. 51-6 (Exhibit 4) at ¶¶ 3-4.

[38] Plaintiffs continuously fail to distinguish the difference between a "Medicaid-eligible" child and a "Medicaid-enrolled" child. Table 27 of the Louisiana Medicaid 2018 Annual Report reflects the number of "Medicaid-enrollees," not the number of "Medicaid-eligible" persons in Louisiana. *See* "Louisiana Medicaid 2018 Annual Report for the 2017/2018 State Fiscal Year," Louisiana Department of Health, Bureau of Health Services Financing (Medicaid), Table 27, p. 49, https://ldh.la.gov/assets/medicaid/AnnualReports/MedicaidAnnualReport2018_v4.pdf. Accessed on October 5, 2020.

[39] Doc. No. 51-2 at p. 11. On September 25, 2020, after Plaintiffs filed its renewed motion, Medicaid filed its 2019 Annual Report. *See* "Louisiana Medicaid 2019 Annual Report for the 2018/2019 State Fiscal Year," Louisiana Department of Health, Bureau of Health Services Financing (Medicaid), https://ldh.la.gov/assets/medicaid/AnnualReports/MedicaidAnnualReport2019.pdf. Accessed on October 5, 2020.

[40] Doc. No. 51-2 at p 11.

organizations] who require specialized behavioral health services."[41] This is factually incorrect and not reflected in Louisiana Medicaid's 2018 Annual Report.

Rather, the report says, "Healthy Louisiana provides full coverage of both physical and specialized behavioral health (SBH) to 85 percent of Medicaid enrollees and SBH coverage [only] to an additional 7 percent of enrollees."[42] Therefore, the 136,755 figure used by Plaintiffs does not represent all Medicaid beneficiaries who require SBH services; it only represents Medicaid enrollees in Healthy Louisiana who have SBH-only coverage.[43] Plaintiffs' figure disregards those Medicaid enrollees who receive coverage for both physical health and SBH through their MCO. Regardless, Plaintiffs continue on with their incorrect calculation and further state that, "**[a]ssuming** SBH services are required by people of all ages at similar rates, multiplying 136,755[44] by 35%[45] produces a total number of 47,497 Medicaid beneficiaries between the ages of 6 and 20 who require specialized behavior services."[46]

As explained above, the Plaintiffs' estimation of the potential class members is problematic. Essentially, Plaintiffs have alerted the Court to following fact: in 2018 136,755 Medicaid beneficiaries (adults and children) enrolled in Healthy Louisiana receive SBH-only

---

[41] *Id.* at p. 12, fn. 7.

[42] "Louisiana Medicaid 2018 Annual Report for the 2017/2018 State Fiscal Year," Louisiana Department of Health, Bureau of Health Services Financing (Medicaid), p. 47, https://ldh.la.gov/assets/medicaid/AnnualReports/MedicaidAnnualReport2018_v4.pdf. Accessed on October 5, 2020.

[43] *Id.* "Individuals enrolled in Healthy Louisiana for SBH only will continue to receive all eligible coverage for physical health, pharmacy, long-term care and waiver services under [the Fee-for-Service program]." *Id.*

[44] This number represents the total amount of Medicaid enrollees in Healthy Louisiana who had "SBH coverage only" in 2018. "Louisiana Medicaid 2018 Annual Report for the 2017/2018 State Fiscal Year," Louisiana Department of Health, Bureau of Health Services Financing (Medicaid), Table 27, p. 49, https://ldh.la.gov/assets/medicaid/AnnualReports/MedicaidAnnualReport2018_v4.pdf. Accessed on October 5, 2020.

[45] Based on Louisiana Medicaid's 2018 Annual Report, Plaintiffs make the leap that since roughly thirty-five percent (35%) of all Medicaid enrollees in Healthy Louisiana were aged six (6) to twenty (20) in 2018, then in 2020 thirty-five percent (35%) of all Medicaid enrollees receiving SBH coverage only (136,755) are children. *See* Doc. No. 51-2 at pp. 11-12, fn. 7. This calculation is not supported by data or logic.

[46] Doc. No. 51-2 at pp. 11-12, fn. 7 (emphasis added).

coverage. The pertinent question is: does this fact provide the Court with any evidence regarding the number of Medicaid beneficiaries under age twenty-one (21), diagnosed with mental health conditions, who are eligible for but not receiving "ICBHS"? Defendants strongly urge that the answer to this pertinent question is "no." The proposed class number (47,500) estimated by Plaintiffs is not supported by Medicaid's 2018 Annual Report, nor is it supported by any other evidence submitted by Plaintiffs. The potential class member size alleged by Plaintiffs does not give the Court a substantiated estimate of the proposed class's numerosity and does not allow the Court to "find" facts favoring class certification.[47]

Moreover, Plaintiffs even seem to indicate an awareness that the proposed class lacks numerosity, as the footnotes of Plaintiffs' renewed motion requests discovery on the numerosity issue if Defendants argue that the numerosity element is absent.[48] Defendants affirmatively oppose class certification on the basis on numerosity, as well as several other threshold requirements of Rule 23. However, should the Court disagree and find that class certification may be proper in this suit, Defendants respectfully aver that the Court should not consider class certification without sufficient data to inform the class certification decision.[49] The U.S. Supreme Court and Fifth Circuit have held that in certain class actions, it is appropriate to conduct controlled discovery into the merits, limited to those aspects relevant to making the certification decision on an informed basis.[50]

---

[47] *Unger v. Amedisys Inc.*, 401 F.3d at 321.

[48] *Id.* at p. 12, fn. 8.

[49] *See Gene & Gene, L.L.C. v. Biopay, L.L.C.*, 624 F.3d 698, 700 (5th Cir. 2010).

[50] *Id.* at 703 n.3. *See also Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc.*, 2019 U.S. Dist. LEXIS 147008, at *21 (E.D. La. Aug. 29, 2019) (wherein the Louisiana Eastern District stated "courts are 'encouraged' to allow discovery on class certification matters" quoting *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d at 703)). In *China Agritech, Inc. v. Resh*, the U.S. Supreme Court acknowledged that, "[t]he Advisory Committee notes accompanying the 2003 amendment to Rule 23(c), which changed the recommended timing for a certification determination from 'as soon as practicable' to 'at an early practicable time,' explained that the <u>change would permit time for 'controlled discovery into the merits,'</u> efforts by defendants" (emphasis added). 138 S.Ct. 1800, 1813, (2018). The Fifth Circuit

### 2. *Commonality*

Rule 23(a)(2) requires a party seeking class certification to prove that the class has common "questions of law or fact." The putative class members' claims must depend upon a "common contention" that is capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[51] "Commonality requires the plaintiff to demonstrate that the class members **'have suffered the same injury**.'"[52] **This does not mean merely that they have all suffered a violation of the same provision of law**.[53] "What matters to class certification…is not the raising of common 'questions'-- even in droves -- but, rather, **the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation**. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."[54]

The district court in *AW v. Magill* denied class certification for a putative class consisting of  "all current and future adult, non-forensic residents of Bryan Hospital who, with appropriate supports and services, would now or in the future be able to live in an integrated community setting and who do not oppose living in an integrated community setting."[55] In that case, the Court noted that Plaintiffs' common injury, which was also "unnecessary institutionalization" like the instant case, would not produce common answers:

---

has also noted that the changes to Rule 23 "are the product of years of study by the Advisory Committee on Civil Rules, including many open hearings and symposia. This collective wisdom must not be brushed aside." *Oscar Private Equity Invs. v. Allegiance Telecom, Inc*., 487 F.3d 261, 267 (5th Cir. 2007).

[51] *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. at 2545.

[52] *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 102 S.Ct. at 2366) (emphasis added).

[53] *Id.* at 2551 (emphasis added).

[54] *Id.* (emphasis added).

[55] *AW v. Magill*, 2018 U.S. Dist. LEXIS 228301, at *4  (D.S.C. Aug. 21, 2018).

…each proposed class member is factually unique from the others. Plaintiffs' proposed common injury—"unnecessary institutionalization"—is not sufficient for a single proceeding to produce common answers that could resolve classwide issues. And, because the proposed class is fundamentally heterogeneous by virtue of each individual's evolving medical treatment, class certification of these over 152 individuals would not produce the efficiency intended by Rule 23. Accordingly, the Court finds the commonality requirement of Rule 23(a) is not satisfied.[56]

In this case, like the plaintiffs in *AW v. Magill*, each proposed class member is factually unique from the other, with individual medical histories. For example, B.B. has never been instutionalized, juvenile justice involved, or enrolled in the Coordinated System of Care Program ("CSoC").[57] On the other hand, E.E. has been institutionalized seven times since 2013, juvenile justice involved, and enrolled in CSoC.[58]  The level of EPSDT services available to B.B. and E.E. will differ depending on the recommendations of their physical health and behavioral health Medicaid providers and evolving necessities.[59]

Here, because each proposed class member is factually distinctive and each EPSDT service criteria differs based on medical necessity, the merits of each potential class member's claims will depend on an individualized inquiry regarding the alleged missing services. In other words, a specific inquiry into each Plaintiff's physical health and behavioral health will be necessary in

---

[56] *Id.* at *9 (citations omitted).

[57] Doc. No. 51-2 at p. 6. *See also* Doc. 51-9 (Exhibit 7) and Doc. No. 51-10 (Exhibit 8). Families enrolled in CSoC will receive intensive, individualized services in their communities. In this process, the family and child partner with a team of people they choose and work together to develop a plan that meets their needs, rather than having other people develop a plan for them. *See* "About Louisiana's Coordinated System of Care (CSoC)," Louisiana Department of Health, https://ldh.la.gov/index.cfm/page/1335. Accessed on October 8, 2020.

[58] Doc. No. 51-2 at p. 8. *See also* Doc. No. 51-15 (Exhibit 13) and Doc 51-16 (Exhibit 14).

[59] 42 U.S.C. § 1396d(r)(5).

order to prove that: (1) each Plaintiff was eligible for and met level of care for a specific EPSDT service covered by Medicaid and provided by a Medicaid provider; (2) Defendants were required to provide that specific service under the EPSDT mandate because it was ordered as medically necessary to ameliorate a physical or mental health condition; and (3) Plaintiff was not receiving that service or was receiving inadequate service. Consequently, "[w]ithout some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question,"[60] which in this case is, "*why was this Plaintiff not receiving a type of EPSDT service in a home and community based setting*?" Defendants contend that due to the dissimilarities within the proposed class, which is evidenced by the Plaintiffs' parents' declarations,[61] the answers to that common question will inevitably vary and prevent a workable classwide resolution that is applicable to all putative Plaintiffs.

Moreover, Plaintiffs fail to narrowly tailor their class certification request to a specific service required by the EPSDT mandate (e.g., psychosocial rehabilitation), which additionally inhibits a common answer to the common question. Plaintiffs are essentially asking the Court to review over approximately "47,500" screening, diagnostic, and treatment decisions that pertain to different EPSDT services. Ironically, several cases cited in support of the *Plaintiffs' Renewed Motion for Class Certification* (Doc. No. 51-2) limit the class definition to a specific, medically necessary service.[62] For example, in *I.N. v. Kent*, a California district court found commonality where plaintiffs alleged defendants failed to arrange for in-home nursing services required by the

---

[60] *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. at 2552.

[61] *See* Doc. Nos. 51-7 through 51-18 (Exhibits 5-16).

[62] Doc. 51-12 at p. 16.

EPSDT mandate.[63] In *M. H. v. Berry*, a Georgia district court found commonality where plaintiffs challenged specific practices by the Georgia Pediatric Program, like the "weaning policy" that reduced in-home nursing hours for medical assistance recipients.[64] In *N.B. v. Hamos*, an Illinois district court found common questions supported class certification when the class definition was limited to scenarios where a licensed practitioner of the healing arts was recommended as a medically necessary service under the EPSDT mandate.[65] Additionally, in *S.R. v. Pennsylvania Department of Human Services*, the court found commonality existed when the class definition was narrowly tailored to address welfare placements by the Pennsylvania Department of Human Services for children with mental health illnesses.[66] Defendants contend that these cases cited by Plaintiffs are distinguishable from the present case because they provided the courts with more sufficient detail as to the class of plaintiffs and specific services at issue. Moreover, the Fifth Circuit's precedent is clear as to the requirements Rule 23, and Defendants respectfully aver that the Fifth Circuit's standards should guide the Court's analysis.

### 3. *Typicality*

Typicality under Rule 23(a)(3) focuses on "the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."[67] "The inherent logic of the typicality requirement is that a class representative will adequately pursue her own claims, and if those claims are 'typical' of those of the rest of the class, then her pursuit of

---

[63] 2019 U.S. Dist. LEXIS 60306, at *5 (N.D. Cal. Apr. 7, 2019).

[64] 2017 U.S. Dist. LEXIS 90999, at *13 (N.D. Ga. June 13, 2017).

[65] 26 F. Supp. 3d 756, 776 (N.D. Ill. 2014).

[66] 325 F.R.D. 103, 110 (M.D. Pa. 2018).

[67] *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); *see also Ibe v. Jones*, 836 F.3d 516, 528-29 (5th Cir. 2016).

her own interest will necessarily benefit the class as well."[68] Additionally, the Fifth Circuit has found that if the claims of the named plaintiffs and putative class members "arise from a similar course of conduct and share the same legal theory," then typicality will not be defeated.[69]

Due to the vagueness and lack of specificity surrounding the proposed class definition, the Court cannot determine whether named Plaintiffs' claims and the putative class members' claims are typical and arise from a similar course of conduct. Additionally, at this point, it is also uncertain whether named Plaintiffs and the potential class members would benefit from the same remedial measures. As discussed above, Plaintiffs have not sufficiently narrowed the class definition and have left the scope of the class open to interpretation. Several questions surrounding the Defendants' alleged conduct remain. For example, what type of services ordered by Medicaid physicians and licensed mental health professionals fall under the umbrella of "IHCBS"? What services and treatments are named Plaintiffs entitled to under the EPSDT mandate and not receiving? Moreover, Plaintiffs have not submitted competent evidence to that Court to support their contention that a common class of 47,500 similarly situated children even exists in Louisiana. Without the answers to these outstanding questions, the Court cannot determine whether all claims arise out of common course of conduct or whether the remedies sought by named Plaintiffs would benefit the proposed common class. Plaintiffs' overall ambiguity and lack of evidentiary support are fatal to class certification request.

---

[68] *Boudreaux v. Sch. Bd. of St Mary Par.*, 2020 U.S. Dist. LEXIS 163838, at *16 (W.D. La. Sep. 8, 2020) (quoting I William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:28 (5th ed. 2019)).

[69] *Adickes v. Hellerstedt*, 753 F. App'x 236, 247 (5th Cir. 2018) (quoting *Stirman v. Exxon Corp.*, 280 F.3d at 562).

4. *Adequacy of Representation*

The named Plaintiffs must be able to "fairly and adequately protect the interests of the class."[70] As discussed in *Plaintiffs' Memorandum of Law in Support* (Doc. No. 51-2) the adequacy of representation requirement is a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation.[71] With respect to the first prong, Defendants do not contest the qualifications, experience, or ability of Plaintiffs' counsel to conduct a class litigation. Therefore, should the Court certify this suit as a class action, Defendants would not oppose the designation of Plaintiffs' counsel as class counsel under Rule 23(g).

The second prong serves to uncover conflicts of interest between named parties and the class they seek to represent.[72] Since the absent class members are bound by the judgment in any class action brought on their behalf, the Court "must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times."[73] Defendants argue that the declarations submitted on behalf of the named Plaintiffs[74] do not clearly demonstrate that they would be adequate representatives of the class because the scope of the proposed class remains ambiguous, as well as the ultimate goal of this case. Since the proposed class is not succinctly defined or ascertainable, it is unclear whether Plaintiffs have the "same

---

[70] Fed. R. Civ. P. 23(a)(4).

[71] *Hays v. Eaton Grp Attys., LLC,* 2019 U.S. Dist. LEXIS 17029, at *14 (M.D. La. Feb. 4, 2019); *see also Berger v. Compaq Comput. Corp.*, 257 F.3d at 479-481.

[72] *Id.* at 480.

[73] *Id.*

[74] *See* Doc. Nos. 51-7 through 51-18 (Exhibits 5-16).

interest and suffer the same injury as the class members."[75]   Accordingly, named Plaintiffs have

not met their burden to prove that they would be adequate representatives of the class.

C.    **The proposed class fails to satisfy the requirements of Rule 23(b)(2).**

1.    *Injunctive relief is not appropriate because Defendants have never refused to act.*

If the class were readily identifiable and all Rule 23(a) requirements were satisfied, then

Plaintiffs must demonstrate that "[Defendants have] acted or refused to act on grounds generally

applicable to the class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the class as a whole" under Rule 23(b)(2). In their motion, the

named Plaintiffs claim they meet the requirements of Rule 23(b)(2) because named Plaintiffs and

the proposed class have "suffered the same injuries: all have been **deprived** of necessary and

timely IHCBS in violation of the Medicaid Act."[76] This allegation of deprivation is without merit.

Defendants have never refused to act. In fact, when Defendants offered to act, Plaintiffs' counsel

declined to give Defendants any details.

Specifically, on September 18, 2019, Defendants' counsel met with various members of

Plaintiffs' counsel after receiving Plaintiffs' Notice of Intent to file a federal lawsuit.[77] At this

meeting, "the only information provided to [the Louisiana Department of Health] was a general

concern about the absence of home and community based mental health services, which included

crisis, in some areas of the state for the EPSDT population."[78] Plaintiffs' counsel would not share

with Defendants' counsel the names of any alleged harmed recipients or provide illustrative

---

[75] *Hays v. Eaton Grp Attys., LLC*, 2019 U.S. Dist. LEXIS 17029, at *14 (M.D. La. Feb. 4, 2019) (quoting *Amchem Prods., Inc. v. Windsor*, 117 S. Ct. 2231, 2251 (1997)).

[76] Doc. No. 51-2 at p. 21 (emphasis added).

[77] *See* Defendants' **Exhibit A**, Emails between Counsel for Southern Poverty Law Center and the Louisiana Department of Health (LDH).

[78] *See* Defendants' **Exhibit B**, LDH's Response to Victor Jones at Southern Poverty Law Center RE: Notice of Intent to File Federal Lawsuit, dated October 18, 2019.

scenarios.[79] Defendants were unable to address Plaintiffs' concerns because Plaintiffs' withheld

the relevant specifics from Defendants.[80] Regardless, Defendants remained "more than willing to

sit down and explore [Plaintiffs'] concerns" if Plaintiffs provided "more specific information on

which specific services [they] believe are lacking, how the current array of services is not sufficient

to meet the mental health needs of the EPSDT population and which areas of the state [they]

believe do not have adequate community based mental health services for this population."[81]

Rather than trying to resolve the issues further with Defendants, Plaintiffs filed suit. For these

reasons, Plaintiffs cannot prove that injunctive relief is appropriate because Defendants have never

refused to act and actively sought to address Plaintiffs' concerns.

**2.** ***Injunctive relief is not appropriate because the injunctive relief requested is not specific, and Plaintiffs have failed to show that the class members have been harmed in the same way.***

The Fifth Circuit has interpreted the language in Rule 23(b)(2) to create two relevant

requirements: "(1) the class members must have been harmed in essentially the same way and (2)

the injunctive relief sought must be specific."[82] In this suit, because the proposed class is not

ascertainable, it is impossible to determine whether the named Plaintiffs and the potential class

members have been harmed in essentially the same way. Furthermore, the U.S. Supreme Court has

clarified that Rule 23(b)(2) applies only when a single injunction or declaratory judgment would

provide relief to each member of the class.[83] "It does not authorize class certification when each

individual class member would be entitled to a different injunction or declaratory judgment against

---

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *M.D. v. Perry*, 675 F.3d at 845 (citations omitted).

[83] *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. at 2557.

the defendant."[84] "Permitting the combination of individualized and classwide relief in a [Rule 23(b)(2)] class is inconsistent with the structure of Rule 23(b)…The Rule provides no opportunity for [Rule 23(b)(2)] class members to opt out, and does not even oblige a district court to afford them notice of the action."[85]

As discussed above, the *Magill* Court denied class certification, finding that the injunctive relief sought by Plaintiffs necessitated a patient-specific inquiry and, therefore, would not have the blanket effect that Rule 23(b)(2) requires.[86] In regards to the Rule 23(b)(2) requirements, the *Magill* Court remarked:

> Plaintiffs contend that "a single injunctive order requiring that Defendants make sufficient community mental health services available" would "benefit the Class as a whole." But each proposed class member's medical diagnosis, future prognosis, treatment plan, and ability to live in a community setting is individualized and subject to change as the member's health and medical status evolve.[87]

Similar to the *Magill* case, the proposed class claims in this suit do not satisfy Rule 23(b)(2) because they include claims for individualized relief dependent on each Medicaid recipient's behavioral health needs.

Furthermore, Plaintiffs' requested injunctive relief fails to provide Defendants with meaningful details and instead generally seeks, "Defendants to provide Plaintiffs and the Class [with the] necessary IHCBS in the most integrated setting appropriate to their needs."[88] Defendants maintain that the term, "IHCBS," is vague and ill-defined. As Plaintiffs point out,

---

[84] *Id.*

[85] *Id.* at 2558.

[86] 2018 U.S. Dist. LEXIS 228301, *15 (D.S.C. August 21, 2018).

[87] *Id.* (citations omitted).

[88] Doc. 51-2 at p. 21.

"Rule 23(b)(2) does not require that every jot and tittle of injunctive relief be spelled out at the class certification stage; it requires only '**reasonable detail**' as to the 'acts required.'"[89] For example, the Fifth Circuit found that inmates in a class action sufficiently identified their requested injunctive relief in "reasonable detail" when they requested defendants sustain safe indoor temperatures of eighty eight (88) degrees or lower.[90] On the other hand, the Fifth Circuit found in *Maldonado v. Ochsner Clinic Foundation* that a Rule 23(b)(2) certification was inappropriate where the plaintiffs sought to compel the defendants to provide "mutually affordable healthcare."[91] There, the Fifth Circuit faulted the plaintiffs for not "identify[ing] any way to determine what a reasonable or 'mutually affordable' rate is for the wide variety of medical services offered by [the defendant]."[92]

Named Plaintiffs' requested injunctive relief does not rise to the moderate level of specificity anticipated by the reasonable detail standard. This case, like *Maldonado v. Ochsner Clinic Foundation*, fails to provide Defendants with any meaningful context or guidance as to what specifically "IHCBS" represents and/or how Defendants could remedy Plaintiffs' grievances. "The difficulty in specifying exactly what [Plaintiffs] seek from an injunction highlights the fact that individualized issues here overwhelm class cohesiveness."[93] This class, as proposed, is not amenable to uniform remedies. Therefore, Defendants contend that injunctive relief is not appropriate for the proposed class as a whole because there is a lack of cohesiveness among the potential class members.

---

[89] *Yates v. Collier*, 868 F.3d 354, 368 (5th Cir. 2017) (emphasis added). *See also* Doc No. 51-2 at p. 21.

[90] *Id.* at 368.

[91] 493 F.3d 521, 524-525 (5th Cir. 2007).

[92] *Id.* at 524.

[93] *Id.*

## IV. <u>CONCLUSION</u>

The proposed class is not ascertainable and fails to satisfy the requirements of Rule 23(a) and Rule 23(b)(2). Accordingly, Defendants respectfully request that the Court deny Plaintiffs' request for class certification.

Respectfully submitted,

**THE LOUISIANA DEPARTMENT OF HEALTH**

By:     */s/ Kimberly Ulasiewicz Boudreaux*
KIMBERLY ULASIEWICZ BOUDREAUX (LBN 37341)
REBECCA CLEMENT, T.A. (LBN 31665)
KIMBERLY SULLIVAN (LBN 27540)
VIVIAN HALEY WILLIAMS (LBN 34819)
RYAN ROMERO (LBN 35987)
628 N. 4th Street
Baton Rouge, Louisiana 70802
Phone: (225) 342-1128
Fax:     (225) 342-2232
Email: kimberly.boudreaux@la.gov
Email: rebecca.clement@la.gov
Email: kimberly.sullivan@la.gov
Email: haley.williams2@la.gov
Email: ryan.romero@la.gov

*ATTORNEYS FOR DEFENDANTS, DR. COURTNEY N. PHILLIPS, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE LOUISIANA DEPARTMENT OF HEALTH, AND THE LOUISIANA DEPARTMENT OF HEALTH*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2020 a copy of the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of this Court's electronic filing system.

By:     */s/ Kimberly Ulasiewicz Boudreaux*
KIMBERLY ULASIEWICZ BOUDREAUX (LBN 37341)