UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **A.A.**, by and through his mother, P.A.; **B.B.**, by and through her mother, P.B.; **C.C.**, by and through her mother, P.C.; **D.D.**, by and through his mother, P.D.; **E.E.**, by and through his mother, P.E., and **F.F.**, by and through her mother, P.F.<br>    *Plaintiffs,*<br>v.<br><br>REBEKAH GEE in her official capacity, as Secretary of the Louisiana Department of Health, and the LOUISIANA DEPARTMENT OF HEALTH<br>    *Defendants.* | CIVIL ACTION NO.: 19-CV-770-BAJ-SDJ<br><br>JUDGE BRIAN A. JACKSON<br><br>MAGISTRATE SCOTT D. JOHNSON<br><br>CLASS ACTION |

**PLAINTIFFS' REPLY IN SUPPORT OF
RENEWED MOTION FOR CLASS CERTIFICATION**

Plaintiffs A.A., B.B., C.C., D.D., E.E., and F.F. (collectively, Plaintiffs) by and through their attorneys, file this reply to the Opposition to Plaintiffs' Renewed Motion for Class Certification made by Defendants Louisiana Department of Health and Hospitals and its Secretary (collectively, Defendants). In support, Plaintiffs aver the following:

## I. INTRODUCTION

Defendants' opposition to class certification argues that Plaintiffs and the proposed class (the Class) have individualized needs and that Plaintiffs have not adequately defined the Class. Defendants recycle these arguments to oppose the Rule 23(a) requisites and Rule 23(b)(2)'s injunctive relief standards. Defendants' assertions are unfounded.

The Class is ascertainable and Class members are readily identifiable based on "precise, objective, and presently ascertainable" conditions: age, Medicaid eligibility, and mental health

1

diagnosis.[1] Contrary to Defendants' assertions, this Court need not conduct individualized assessments or provide individualized remedies because, here, the Plaintiffs seek systemic relief for the benefit of the Class. Plaintiffs challenge Defendants' policies, practices, and procedures as denying Plaintiffs and the Class the timely services they are entitled to under the Medicaid EPSDT and reasonable promptness provisions. Further, these policies have the effect of subjecting Plaintiffs and the Class to unnecessary institutionalization or the serious risk thereof in violation of Title II of the Americans with Disabilities Act (Title II) and Section 504 of the Rehabilitation Act (Section 504). The common issues that drive this litigation stem from Defendants' systemic failure to provide Plaintiffs and the Class necessary intensive care coordination, crisis services, and intensive behavioral services and supports (collectively referred to as intensive home and community-based services or IHCBS). In circumstances similar to this one, numerous courts have certified similarly defined classes. Therefore, class certification is appropriate here.

## II. ARGUMENT

### A. The Class Plaintiffs Propose Is Ascertainable.

#### i. For an injunction-only class, the ascertainability standard is lower and must allow for flexibility.

The Fifth Circuit makes clear that a class must be ascertainable to be certified.[2] But numerous courts also recognize that where the "class action seeks only injunctive or declaratory relief, for which the notice provision of Fed. R. Civ. P. 23(c)(2) is not mandatory, the district court has even greater freedom in both the timing and specificity of its class definition."[3]

---

[1] Rec. Doc 52 at 4-5 (citation omitted); Rec. Doc. 51-2 at 2.
[2] *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).
[3] *Battle v. Commonwealth,* 629 F.2d 269, 271 n. 1 (3d Cir. 1980) (citations omitted); *see also Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014) (stating, "'where certification of a (b)(2) injunctive class is sought, actual membership of the class need not . . . be precisely delimited' because such cases will not require individualized notice, opt-out rights, or individual damage assessments, and the defendant will be required to comply with the relief ordered no matter who is in the class."); *McCuin v. Sec. of Health and Human Svcs.,* 817 F.2d 161, 167 (1st Cir.1987) ("[W]here only declaratory and injunctive relief is sought for a class, plaintiffs are not required to identify

Here, Plaintiffs' proposed class definition is sufficient to "identify properly 'those entitled to relief, those bound by the judgment, and those entitled to notice.'"[4] The Class is ascertainable.

### ii. The term "IHCBS" is not vague.

Contrary to Defendants' assertions, the meaning of IHCBS is not vague. It is a well-understood term in the Medicaid context. As one court explained:

> [T]he label "intensive home-based services" [is] . . . a short-hand for the amalgam of clinical interventions . . . the EPSDT portions of the Medicaid statute require Defendants to provide . . . [and] the array of actual clinical interventions that constitute, in the terms of the Medicaid statute, "medically necessary" services for class members. . . . e.g., comprehensive assessment, effective service coordination, and adequate in-home behavioral supports.[5]

Further, Defendants are incorrect in asserting that: "The EPSDT provisions of the Medicaid Act do not require states to provide 'IHCBS.'"[6] The EPSDT provisions of the Medicaid Act require states to "arrang[e] for . . . corrective treatment" recommended by a qualified provider for a beneficiary under age 21, including "necessary health care . . . treatment . . . to correct or ameliorate . . . mental illnesses and conditions."[7]

Several cases involving Medicaid mental health services for children have certified classes using terminology similar to that used by Plaintiffs.[8] Here, Plaintiffs have specified that the Class

---

the class members once the existence of the class has been demonstrated."); *Shook v. El Paso Cty.,* 386 F.3d 963, 972–973 (10th Cir. 2004) ("Rule 23(b)(2) [is] well suited for cases where the composition of a class is not readily ascertainable" due to the "shifting" nature of the population, although "[e]lements of manageability and efficiency are not categorically precluded in determining whether to certify a 23(b)(2) class."); *C.f. In re Monumental Life Ins. Co.,* 365 F.3d 408, 413 (5th Cir. 2004) ("Where notice and opt-out rights are requested, however, a precise class definition becomes just as important as in the rule 23(b)(3) context.").

[4] *In re Monumental Life Ins. Co.,* 365 F.3d at 413 (quoting 5 James W. Moore et al., Moore's Federal Practice § 23.21[6], at 23–62.2 (3d ed.2003)).
[5] *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 30-31 (D. Mass. 2006).
[6] Rec. Doc. 52 at 6.
[7] 42 U.S.C. §§ 1396a(a)(43)(C), 1396d(r)(5); *see also Katie A., ex rel. Ludin v. Los Angeles Cty.*, 481 F.3d 1150, 1158–59 (9th Cir. 2007) (holding states must "cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes. . . . States also must ensure that the EPSDT services provided are reasonably effective.").
[8] *See, e.g., Katie A.,* 481 F.3d at 1152 (certifying a class of children who were "entitled to and had not received 'medically necessary mental health services in a home-like setting'"); *N.B. v. Hamos*, 26 F. Supp. 3d 756, 769 (N.D. Ill. 2014) (certifying a class of: "[a]ll Medicaid-eligible children under the age of 21 in the State of Illinois: (1) who

is entitled to but is not receiving three specific IHCBS: intensive care coordination, crisis services, and intensive behavioral services and supports.[9] Plaintiffs have provided clear notice of what "IHCBS" are at issue in this case. The Court can easily determine which children fall within the class definition.

Defendants' reliance on *Steimel* is misplaced.[10] There, plaintiffs sought to certify a class of "[a]ny and all persons, current and future, terminated from the [waiver] as a result of the 2011 Policy Change who require more services each year than are available through the [FS waiver] and who are not enrolled in the [CIH waiver]."[11] The court found the class definition too vague because it was not clear how the court would determine whether "the potential class members 'require' more services than available under the FS waiver[.] Are they medically required? Required for regular community interaction? Required so as not to violate the integration mandate?"[12]

Here, by contrast, the Court can easily determine which children belong in the Class because the Class is defined by "the application of a set of simple, objective criteria."[13] The Class is composed of children under age 21 who are enrolled in Medicaid and who have a diagnosed mental health condition, meaning the child has been screened by a licensed practitioner and determined to have a mental health condition. In this way, Plaintiffs' proposed class definition is remarkably similar to the class certified in *Hamos*, where the court found the class ascertainable because it was

---

have been diagnosed with a mental health or behavioral disorder; and (2) for whom a licensed practitioner of the healing arts has recommended *intensive home- and community-based services* to correct or ameliorate their disorders.") (emphasis added); *see also* Exh. 1 (*T.R. et al. v. Dreyfus*, No. 2:09-cv-01677-TSZ, Dkt. 60 at 2 (W.D. Wash., July 23, 2010)) (certifying class of Medicaid-eligible children under age 21 who "are determined and documented by a licensed practitioner […], to have a mental illness or condition . . . [and] for whom *intensive home and community-based services* . . . have been, or would have been recommended by a licensed practitioner in order to correct or ameliorate a mental illness or condition.") (emphasis added).

[9] Rec. Doc. 48 at ¶ 1.
[10] Rec. Doc. 52 at 6-7 (citing *Steimel v. Wernert*, 823 F.3d 902 (7th Cir. 2016)).

[11] *Steimel*, 823 F.3d at 917.
[12] *Id.* at 917–18.
[13] *Hamos*, 26 F. Supp. 3d at 764 (quoting *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012)).

limited to "those children who have received a diagnosis and recommendation by an appropriate provider for the home or community-based services."[14]

The class here is limited to children who have been diagnosed with a mental health condition and who need IHCBS. Plaintiffs' use of the term "IHCBS" does not render the Class so indefinite that it cannot be certified.

### iii. Extensive, individual fact-finding is not required to identify Class members.

Members of the Class in this case can be readily identified "by reference to objective criteria," so that individualized fact-finding is not necessary.[15] In *Hamos,* defendants—as they do here—objected to the class definition, arguing that it was "so indefinite that the individual members cannot be identified short of conducting highly individualized evidentiary hearings."[16] The court agreed with defendants that "the diagnosis of mental and behavioral disorders is plainly an individualized and child-specific undertaking," but found that the proposed class was nevertheless ascertainable since "the class definition . . . presupposes such a diagnosis as a condition of class membership."[17]

In the instant matter, the Class is ascertainable because Class members are readily identified by clear, objective criteria: age, Medicaid eligibility, and diagnosis.

---

[14] *Id.* at 768.
[15] *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y. 2010).

[16] 26 F. Supp. 3d at 763.
[17] *Id.* at 764; *see also, e.g., M. H. v. Berry*, No. 1:15-CV-1427-TWT, 2017 WL 2570262, at *3 (N.D. Ga. June 14, 2017) (noting "an inquiry into whether each putative class member is receiving all medically necessary hours is very fact specific," but finding certification appropriate since "every [Medicaid] participant is subject to the policies and practices the Plaintiff is challenging."); *O.B. v. Norwood*, No. 15 C 10463, 2016 WL 2866132, at *1 (N.D. Ill. May 17, 2016) (finding a class of "[a]ll Medicaid-eligible children under the age of 21 in the State of Illinois who have been approved for in-home shift nursing services . . . but who are not receiving in-home shift nursing services" is ascertainable.).

### B. Plaintiffs Have Satisfied The Rule 23 Prerequisites.

#### i. Plaintiffs are so numerous that joinder is impracticable.

Plaintiffs have established numerosity because the joinder of Class members would be impracticable.[18] Defendants assert that there are no guidelines to calculate the number of Class members.[19] This argument, in part, restates their argument concerning ascertainability and should be rejected for the reasons stated above.

Defendants also ask the Court to "place little credence in the Plaintiffs' estimated size of the proposed Class" and critique Plaintiffs' method of estimation.[20] But to establish numerosity, Plaintiffs need not know now the exact number of class members. Instead, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."[21] Defendants control Medicaid enrollment data and could have shared it with the Court to dispute the number of Class numbers with precision. They chose not to do so. Instead, they offer critiques that only serve to increase the Class size.[22] Plaintiffs used the best publicly available information to estimate the size of the Class and those estimates show Plaintiffs meet the numerical threshold for numerosity.[23]

---

[18] Rec. Doc. 51-2 at 11-14.
[19] Rec. Doc. 52 at 8.
[20] *Id.* at 9.
[21] *Penderson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000) (citing *Zeidman v. J. Ray McDermott & Co., Inc*., 651 F.2d 1030, 1038 (5th Cir. 1981)).
[22] Defendants do not dispute that the Class includes children who receive specialized behavioral health services (SBH). Rec. Doc. 52 at 8-11. It is clear that children who are diagnosed with conditions that can be treated with SBH would also be eligible for IHCBS and are entitled to IHCBS services under the EPSDT mandate. Plaintiffs' estimate of Class size would increase by accepting Defendants' critique of adding Medicaid enrollees who receive both physical and behavioral health coverage because this would add to the "136,755 figure." Rec. Doc. 52 at 10. Furthermore, the "136,755 figure" increased to 152,723 in the 2019 Annual Medicaid Report, and this increase would likely increase the estimated Class size as well. *See Louisiana Medicaid 2019 Annual Report*, at 65, available at https://ldh.la.gov/assets/medicaid/AnnualReports/MedicaidAnnualReport2019.pdf, (last accessed October 15, 2020). Finally, Plaintiffs are aware that the "136,755 figure" includes both adults and children, and used 35%, the proportion of children to adults within Louisiana's Medicaid system in 2018, to estimate the number of children and youth. Rec. Doc. 51-2 at 12.
[23] Plaintiffs' opening brief included a conditional request for discovery on numerosity in the event the Court wanted a more exact number of Class members. Defendants' arguments have not undercut Plaintiffs' showing of numerosity. Should the Court disagree, however, Plaintiffs ask the Court to allow them discovery on this point.

### ii. Plaintiffs have established commonality.

Defendants argue that commonality is lacking because individualized inquiries will be required to determine Class membership and because Plaintiffs need to be seeking a specific service.[24] These arguments miss the mark. Here, the common question for the Plaintiffs and the Class is whether Defendants are failing to maintain a system that ensures necessary and timely IHCBS.[25] Defendants' systemic failures are the "glue" uniting Plaintiffs' individualized claims.[26] Indeed, Plaintiffs' proffer five common questions of law and fact that directly relate to Defendants' practices, policies, and procedures, or lack or deficiencies thereof.[27] Other courts have found classwide questions similar to those posed by Plaintiffs sufficient to meet commonality.[28] Defendants' reliance on *A.W. v. Magill* to address commonality and the Rule 23(b)(2) standards is misguided.[29] The proposed class definition in *Magill* contained precatory language that required a two-step inquiry: whether an individual could live in the community, and second, whether the individual does "not oppose living in an integrated community setting."[30] No such inquiries are required here.

To answer Plaintiffs' five common questions, this Court will not be required to conduct 47,500 fact-intensive, individualized inquiries as Defendants forebode.[31] Rather, this Court need only determine whether systemic failures in Defendants' Medicaid system undermine the Class's ability

---

[24] Rec. Doc. 52 at 12-15.
[25] *C.f. Lewis v. Cain*, 324 F.R.D. 159, 170 (M.D. La. February 26, 2018) (finding commonality based on a systemic denial of rights to named plaintiffs and their fellow prisoners).
[26] *See Norwood*, 2016 WL 2866132, at *4 ("'systemic failure' or 'illegal policy' can 'provide the "glue"' necessary to litigate otherwise highly individualized claims as a class,' where the agency 'operated under' policies 'that violated' the act in question") (citing *Jamie S.*, 668 F.3d at 498).
[27] Rec. Doc. 51-2 at 15.
[28] *See id.* at 16-17.
[29] 2018 WL 6680941 (D.S.C. Aug. 21, 2018); Rec. Doc. 52 at 12-13, 20.
[30] *Id.* at *1.
[31] Rec. Doc. 51-2 at 15; Rec. Doc. 52 at 14.

to access IHCBS. In making this determination, the Court can resolve Plaintiffs' common questions with "one stroke."[32]

Without merit, Defendants also argue that Plaintiffs' failure to "narrowly tailor their class certification request to a specific service required by the EPSDT mandate inhibits a common answer to the common questions."[33] This "narrowly tailored" standard is an invention of Defendants.

Courts have certified class definitions that do not even identify a single service sought by Plaintiffs. For example, in *Chisholm,* to which Defendants were a party, the court certified a class of "[a]ll current and future recipients of Medicaid in the State of Louisiana under the age of twenty-one who are now and will in the future be placed in . . . [w]aiver waiting list."[34]

Courts also regularly certify classes seeking changes to an array of services. In *Barthelemy*, also involving Defendants, the court certified a class of nursing home residents who had not received Medicaid funded community-based services.[35] Defendants' argument that a class definition must relate to specific services sought is incorrect as a matter of law.

### iii. Plaintiffs have established typicality and adequacy of representation.

Contrary to Defendants' assertions, Plaintiffs have defined the Class with enough specificity for the Court to see that the Plaintiffs' claims are typical of the Class's and that Plaintiffs will serve as adequate class representatives.[36] The differences in the Plaintiffs' circumstances do not defeat

---

[32] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).
[33] Rec. Doc. 52 at 14.
[34] *Chisholm v. Jindal*, No. CIV. A. 97-3274, 1998 WL 92272, at *7 (E.D. La. Mar. 2, 1998); *see also, e.g.*, *Tinsley v. Faust*, 411 F. Supp. 3d 462, 486 (D. Ariz. 2019) (certifying a class of all children who are or will be in Arizona's foster care system "who are entitled to early and periodic screening, diagnostic, and treatment services under the federal Medicaid statute.").
[35] *Barthelemy v. Louisiana Dep't of Health & Hosps.,* No. CIV.A. 00-1083, 2003 WL 1733534, at *1 (E.D. La. Mar. 31, 2003); *see also Hamos*, 26 F. Supp. 3d at 756; *Rosie D.*, 410 F. Supp. 2d at 22; *Tinsley,* 411 F. Supp. 3d at 486.
[36] Rec. Doc. 51-2 at 17-20.

8

typicality and adequacy of representation. Importantly, "the 'typicality' test is 'not demanding,' and the parties' claims and defenses must be merely 'typical,' not 'identical.'"[37]

While claiming that several open questions defeat typicality, Defendants give only two examples and recognize that these questions surround *their* alleged conduct, not Plaintiffs'.[38] Defendants overlook how these questions concern how they operate their system. Also, Defendants' questions address the merits of the case and are not relevant at the class certification stage.[39]

### iv. The Class meets the requirement of Rule 23(b)(2).

#### 1. Defendants have refused to act.

Citing a single meeting with Plaintiffs' counsel, Defendants argue that Rule 23(b)(2) has not been met because they have never refused to address Plaintiffs' concerns.[40] Since at least 2014, Defendants have been aware of the deficiencies in their Medicaid system and have failed to take any corrective action.[41] Ultimately, Defendants have a legal duty to fulfill the EPSDT mandate and provide the required services, but they have refused to do so.

#### 2. Plaintiffs' request for injunctive relief is specific and addresses the harms inflicted on all Class members.

Defendants urge that relief is contingent on individualized inquiries. But a single injunction or declaratory judgment would provide relief to Plaintiffs and Class members. The violations alleged

---

[37] *Pitts v. Greenstein,* No. CIV.A. 10-635-JJB-SR, 2011 WL 2193398, at *5 (M.D. La. June 6, 2011) (citing *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997)).
[38] *See* Rec. Doc. 52 at 16.
[39] *See In re Deepwater Horizon*, 739 F.3d 790, 798 (5th Cir. 2014) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").
[40] Rec. Doc. 52 at 18.
[41] *See* Rec. Doc. 48 ¶ at 8a-8d; *see also* Exh. 2 (Correspondence to Center for Medicare and Medicaid Services); *see also* FY 2020-2021 *Combined Behavioral Health Assessment and Plan*, Louisiana Department of Health, at 15 (September 1, 2019), available at https://ldh.la.gov/assets/csoc/block_grant/FY20-21BGApplicationFinal-revision.request.updates.pdf (last viewed October 18, 2020) (noting a need for crisis services and case management in Defendants' system).

here are precisely the kinds targeted by Rule 23(b)(2). An order forcing Defendants "to comply with their statutory . . . mandates would constitute relief generally applicable to the entire putative class."[42] As discussed above and in Plaintiffs' opening brief, courts routinely certify (b)(2) classes where Medicaid recipients seek to enforce their rights through injunctive relief.[43]

This case is distinguishable from *Maldonado v. Ochsner Clinic Foundation* because, here, the Plaintiffs seek enforcement of the law on a prospective basis rather than individualized relief for past harms.[44] Indeed, Plaintiffs, in the instant matter are not seeking extraordinary or individualized relief. Plaintiffs have identified both the failures in Defendants' system and the actions required to remedy these failures. Plaintiffs are simply requesting the Court order Defendants to follow the law and fulfill the EPSDT and Title II mandates.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Renewed Motion Class Certification and certify the proposed Class.

                                                    A.A., B.B., C.C., D.D., E.E., and F.F.
                                                    By and through their parents,

| | |
|---|---|
| /s/ Ronald Lospennato | /s/ Neil S. Ranu |
| Ronald Lospennato, LA Bar No. 32191 | Neil S. Ranu, LA Bar No. 34873 (T.A) |
| Evelyn Chuang, LA Bar No. 38993 | Sophia Mire Hill, LA Bar No. 36912 |
| **Disability Rights Louisiana** | Lauren Winkler, LA Bar No. 39062 |
| 8325 Oak Street, New Orleans, LA 70118 | **Southern Poverty Law Center** |
| Phone: (504) 522-2337 | 201 St. Charles Avenue, Suite 2000 |
| Facsimile: (504) 522-5507 | New Orleans, LA 70170 |
| rlospennato@disabilityrightsla.org | Phone: (504) 486-8982 |
| echuang@disabilityrightsla.org | Facsimile: (504) 486-8947 |
| | neil.ranu@splcenter.org |
| | sophia.mire.hill@splcenter.org |
| | lauren.winkler@splcenter.org |

---

[42] *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 64 (3d Cir. 1994).
[43] Rec. Doc. 51-2 at 21-22.
[44] 493 F.3d 521 (5th Cir. 2007).

/s/ Kimberly Lewis
Kimberly Lewis, CA Bar No. 144879*
Abigail Coursolle, CA Bar No. 266646*
**National Health Law Program**
3701 Wilshire Boulevard, Suite 750
Los Angeles, CA 90010
Phone: (310) 204-6010
lewis@healthlaw.org
coursolle@healthlaw.org

/s/ Britney R. Wilson
Britney R. Wilson, NY Bar No. 5426713*
Saima Akhtar, NY Bar No. 4661237**
**National Center for Law and Economic Justice**
275 Seventh Avenue, Suite 1506
New York, NY 10001-6860
Phone: (212) 633-6967
Facsimile: (212) 633-6371
akhtar@nclej.org
wilson@nclej.org

/s/ Darin W. Snyder
Darin W. Snyder, CA Bar No. 136003*
Kristin M. MacDonnell, CA Bar No. 307124*
**O'Melveny & Myers LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Phone: (415) 984-8700
Facsimile: (415) 984-8701
dsnyder@omm.com
kmacdonnell@omm.com

\* *Admitted Pro Hac Vice*
\*\* *Pro Hac Vice Motion Pending*

***Counsel for Plaintiffs and class members***

11

# Exhibit A