## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **A. A.,** *by and through his mother,* ***P.A.***, **ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| **DR. COURTNEY N. PHILLIPS,** *in her official capacity, as Secretary of the Louisiana Department of Health*, **ET AL.** | **NO. 19-00770-BAJ-SDJ** |

## RULING AND ORDER

Before the Court is Plaintiffs' Renewed Motion For Class Certification (Doc. 51). Defendants Louisiana Department of Health, and Dr. Courtney N. Phillips, Secretary of the Louisiana Department of Health (collectively, "Defendants"), oppose Plaintiffs' Motion. (Doc. 52). Plaintiffs have a filed a reply in further support of their request. (Doc. 61). For reasons to follow, Plaintiffs' Motion shall be granted, and this action shall proceed as a class action, with a class consisting of:

> All Medicaid-eligible youth under the age of 21 in the State of Louisiana (1) who have been diagnosed with a mental health or behavioral disorder, not attributable to an intellectual or developmental disability, and (2) for whom a licensed practitioner of the healing arts has recommended intensive home- and community- based services to correct or ameliorate their disorders.

### I. OVERVIEW

This putative class action challenges whether the Louisiana Department of Health ("LDH") is fulfilling its statutory duty to provide medically necessary mental health interventions to Medicaid-eligible children with diagnosed mental health

disorders. Similar class-action lawsuits are proceeding against state agencies across the country.[1] Plaintiffs' core allegation is that LDH maintains a policy of not providing "intensive home and community-based services" ("IHCBS")—defined herein as "intensive care coordination, crisis services, and intensive behavioral services and supports that are necessary to correct or ameliorate [Plaintiffs'] mental illnesses or conditions." (Doc. 48 at ¶ 1).  Plaintiffs allege that, instead, LDH only provides basic mental health interventions, such as medication management and infrequent counseling. As a result, Medicaid-eligible children requiring intensive mental health care are untreated and, when they inevitably experience mental health crises, are forced to seek emergency care or, worse, psychiatric institutionalization. Plaintiffs contend that LDH's failure to provide IHCBS violates their right to medically necessary treatment under Title XIX of the Social Security Act, 42 U.S.C.A. § 1396a (the "Medicaid Act"), and, further, violates their right to treatment in the least restrictive setting under Title II of the Americans With Disabilities Act, 42 U.S.C. § 12132, *et seq.* (the "ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 (the "RA").

Plaintiffs now seek class certification, to pursue claims on behalf of:

All Medicaid-eligible youth under the age of 21 in the State of Louisiana who are diagnosed with a mental illness or condition, not attributable to an intellectual or developmental disability, and who are eligible for, but

---

[1] *See, e.g., N.B. v. Hamos*, 26 F. Supp. 3d 756 (N.D. Ill. 2014) (Tharp, Jr., J.) (order certifying class to pursue Medicaid-eligible children's claims that Illinois's failure to provide home and community-based mental health interventions violated the Medicaid Act, Title II of the Americans with Disabilities Act, and the Rehabilitation Act; *S.R., by & through Rosenbauer v. Pennsylvania Dep't of Hum. Servs.*, 325 F.R.D. 103 (M.D. Pa. 2018) (Jones, III, J.) (same, Pennsylvania); *M. H. v. Berry*, No. 15-cv-1427, 2017 WL 2570262 (N.D. Ga. June 14, 2017) (Thrash, Jr., J.) (same, Georgia); *O.B. v. Norwood*, No. 15-cv-10463, 2016 WL 2866132 (N.D. Ill. May 17, 2016) (Kocoras, J.) (same, California).

not receiving, intensive home and community based (mental health) services.

(Doc. 51 at 1).

## II.    BACKGROUND

The following facts are derived from Plaintiffs' Second Amended Complaint (Doc. 48, the "SAC"), Plaintiffs' Memorandum Of Law In Support Of Plaintiffs' Renewed Motion For Class Certification (Doc. 51-2, the "Class Action Memo") and accompanying declarations, publicly available documents referenced in Plaintiffs' SAC and Class Action Memo, and the statutory framework underpinning Plaintiffs' claims.

### A. The Medicaid Act requires participating States to provide home- and community-based mental health services and interventions when recommended to treat children's mental disorders and conditions

The Medicaid Act sets forth requirements for a State's participation in the federal Medicaid program. *See* 42 U.S.C. § 1396a. Among other things, the State's Medicaid Plan must provide: a means of informing all Medicaid recipients under the age of 21 of the availability of early and periodic screening, diagnostic, and treatment services ("EPSDT Services"); screening health services whenever they are requested; and "corrective treatment the need for which is disclosed by such child health screening services." *Id*. § 1396a(43)(A)-(C). The State may provide ESPDT Services "directly or through referral to appropriate agencies, organizations, or individuals." *Id*. § 1396a(43)(C).

EPSDT Services the State must provide are set forth at 42 U.S.C. § 1396d(r), and specifically include "necessary health care, diagnostic services, treatment, and

3

other measures described in subsection (a) to correct or ameliorate … ***mental illnesses and conditions discovered by the screening services***." 42 U.S.C. § 1396d(r)(5) (emphasis added). Subsection (a), in turn, defines "medical assistance" to include

> other diagnostic, screening, preventative, and rehabilitative services, including … ***any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts*** within the scope of their practice under State law, for the maximum reduction of physical ***or mental disability*** and restoration of an individual to the best possible functional level.

*Id.* § 1396d(a)(13) (emphasis added).

Significantly, all EPSDT Services set forth in the Medicaid Act must be provided "***whether or not such services are covered under the State plan***." *Id.* § 1396d(r)(5) (emphasis added); *see S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 589 (5th Cir. 2004) ("The natural reading of § 1396d(r)(5)'s phrases is that all of the health care, services, treatments and other measures described by § 1396d(a) must be provided by state Medicaid agencies when necessary to correct or ameliorate unhealthful conditions discovered by screening, regardless of whether they are covered by the state plan. This reading is also required by the grammatical structure of § 1396d(r)(5). The language and structure Congress used cannot be read in any other way without rendering the crucial phrases meaningless."). In other words, the Medicaid Act *mandates* that the State provide coverage for *all* services and interventions recommended by a "physician or other licensed practitioner of the healing arts" to correct or ameliorate a diagnosed condition. 42 U.S.C. § 1396d(a)(13). *All* recommended services and interventions necessarily *includes* recommended

IHCBS. "This is a broad construction, but one that is entirely consistent with the sweeping scope of the EPSDT program, which has been frequently noted by the courts." *N.B. v. Hamos*, 26 F. Supp. 3d 756, 765 (N.D. Ill. 2014) (citing authorities); *see S.D. ex rel. Dickson*, 391 F.3d at 586 ("EPSDT is a comprehensive child health program designed to assure the availability and accessibility of health care resources for the treatment, correction and amelioration of the unhealthful conditions of individual Medicaid recipients under the age of twenty-one.").

### B. Plaintiffs allege that LDH maintains a policy of *not* providing recommended IHCBS, and instead provides only basic interventions that are inadequate to satisfy its Medicaid mandate

LDH is the single state agency responsible for administering Louisiana's Medicaid program. LDH fulfills its role primarily by contracting with 5 Managed Care Organizations ("MCO") to deliver physical health and mental health services to all Medicaid beneficiaries, including children and youth. (SAC ¶ 59).

According to Plaintiffs, LDH has fallen well short of its charge, at least as to mental health services available to children. Specifically, Plaintiffs take aim at LDH's failure to provide IHCBS, including "intensive care coordination, crisis services, and intensive behavioral services and supports that are necessary to correct or ameliorate their mental illnesses or conditions." (SAC at ¶ 1). Plaintiffs allege that, instead, LDH provides only "minimal medication management with infrequent counseling." (SAC at ¶ 4). Due to LDH's policy of *not* providing IHCBS, Medicaid-eligible children requiring intensive mental health interventions "deteriorate in their homes and/or cycle in and out of emergency rooms and psychiatric facilities away from their

families and communities. Their conditions either worsen or do not improve, and they become unnecessarily institutionalized or at serious risk thereof." (*Id.* ¶ 4).

LDH's failure to make IHCBS available to children is hardly a secret. In November 2014, Mental Health America published a report (the "MHA Report") stating that nearly 55,000 Louisiana children requiring mental health interventions do *not* receive them.[2] In direct response to the MHA Report, the Louisiana Legislative Auditor has conducted multiple reviews of the Specialized Behavioral Health Services ("SBH Services") LDH provides to Medicaid beneficiaries. The Legislative Auditor's findings are particularly relevant here, because SBH Services are the functional equivalent of IHCBS, and specifically include "psychosocial rehabilitation (PSR), assertive community treatment, therapy, and crisis intervention."[3]

The Legislative Auditor paints a dismal picture of LDH's performance. The Auditor's October 2017 Report found that 45 percent of mental health professionals contracted by MCOs to provide SBH Services do *not* meet professional licensure requirements; that faulty data entry and faulty data collection procedures make it impossible to "accurately determine how many SBH services are actually rendered"; and that LDH fails "to ensure that MCOs are not overstating the number of [SBH] providers in their networks."[4]

---

[2] *See* Mental Health American, *Parity or Disparity, The State of Mental Health in America 2015*, at 33, *available at* https://www.mhanational.org/sites/default/files/Parity%20or%20Disparity%20Report%2 0FINAL.pdf.

[3] *See* Louisiana Legislative Auditor, *Access To Comprehensive And Appropriate Specialized Behavioral Health Services In Louisiana, Louisiana Department of Health* (Feb. 14, 2018) (the "LLA February 2018 Report), at 1 & n. 1, *available at* https://www.lla.la.gov/PublicReports.nsf/B99F834BF8F4AB90 8625823400758F9B/$FILE/000179B4.pdf (defining).

[4] Louisiana Legislative Auditor, *Network Adequacy Of Specialized Behavioral Health Providers, Office Of Behavioral Health Louisiana Department Of Health* (Oct. 18, 2017) (the "LLA October 2017 Report),

The Auditor's February 2018 Report "found that Louisiana does not always provide Medicaid recipients with comprehensive and appropriate [SBH Services]."[5] To support this conclusion, the Auditor observed:

- Louisiana ranks last in the nation in terms of children and youth who need mental health interventions but do not receive them. In 2015, 54,563 children requiring mental health services were denied interventions.

- LDH fails to provide SBH Services to Medicaid recipients, causing Medicaid recipients to seek SBH Services from emergency rooms: "*adequate community-based SBH services do not exist*, emergency departments do not have adequate bed space to meet demand, and there is a lack of appropriate follow-up services upon release."

- LDH does not maintain a designated crisis receiving center.

- LDH has no state psychiatric hospital for children or youths.

- Fewer than 1 percent of Medicaid recipients with a mental health disorder receive case management services, resulting in lack of coordination among providers and fragmented care.

- Budget cuts have decreased LDH's ability to pay for SBH Services and have led to delays in providing substitute services.[6]

Notably, when given the chance to respond, LDH did not object to the Legislative Auditor's findings, or recommendations for improvement.[7]

Each of the 6 named Plaintiffs in this action is a child or youth under the age of 21, diagnosed with a mental health disorder. (SAC at ¶¶ 14-19). All are covered by Medicaid. (*Id.*). Plaintiffs allege that their experiences navigating LDH's mental

---

*available at* https://www.lla.la.gov/PublicReports.nsf/E4DC58E4CFC93F01862581BC0062D8A8/$FILE/000166B0.pdf, at 4-7.

[5] LLA February 2018 Report, supra n.3, at 3.

[6] LLA February 2018 Report, *supra* n.3, at 3-17 (emphasis added).

[7] *See* LLA October 2017 Report, *supra* n.4, Appendix A (Management's Response); LLA February 2018 Report, *supra* n.3, Appendix A (Management's Response).

7

health system typify the experiences of all Medicaid-eligible children with mental health disorders across Louisiana. (*Id.* at ¶¶ 25, 83-84).

A.A. is a 12-year old Medicaid recipient residing in East Baton Rouge Parish. A.A. loves computers, and aspires to attend college and become an FBI agent. A.A. has been diagnosed with four different mental health disorders. During moments of crisis, A.A. exhibits anger and defiance, engages in fighting and attention-seeking behaviors, and expresses suicidal ideations. "In light of his behaviors, A.A.'s providers determined that A.A. needs weekly individual, family, and group counseling; monthly medication management; psychiatric reassessments, as needed; care coordination; and IHCBS, including crisis services." (SAC at ¶ 86; Class Action Memo at 5). Despite his providers' recommendations, A.A. has never received such services "because Defendants do not make these services available in the state's Medicaid program." (SAC at ¶ 87).

Lacking medically necessary treatment, A.A. has been institutionalized at psychiatric facilities 6 times since 2014. The SAC alleges:

> A.A.'s institutionalizations follow a cyclical pattern: in the absence of IHCBS, including crisis services, A.A.'s mother reluctantly takes her son to the nearest emergency room, where he is then referred by a physician for treatment at psychiatric institutions located hundreds of miles away from home. Upon being discharged, the psychiatric institution provides A.A.'s mother with a discharge plan, advising A.A.'s mother to call 911, a 1-800 suicide hotline, or the psychiatric facility itself if he experiences another psychiatric episode. Despite his mother's requests to his providers for IHCBS, A.A. returns home where he receives basic, inadequate behavioral interventions consisting of the same infrequent counseling sessions and occasional medication management he was receiving prior to his institutionalization. Resultantly, A.A. becomes re-institutionalized.

(SAC at ¶ 89).

8

Despite numerous requests to LDH, A.A.'s mother has been unable to secure the interventions recommended for A.A. As such, A.A.'s mental health continues to deteriorate, and A.A. remains at constant risk of institutionalization and separation from his family, community, and school. (SAC at ¶¶ 85-91; *see also* Class Action Memo at 5-6; Doc. 51-7 (Declaration Of P.A. In Support Of Plaintiffs' Motion For Class Certification); Doc. 51-8 (Supplemental Declaration of P.A.)).

B.B. is a 14-year old Medicaid recipient residing in Caddo Parish. B.B. is enrolled in her school's gifted program and is described by her mother and teachers as an overall pleasant young person. B.B. has been diagnosed with multiple mental disorders, exhibited by aggression, inattentiveness, anxiousness, suspiciousness, bouts of depression, and psychiatric crises. B.B. has been referred to a psychiatrist, and has "been offered medication management and counseling every other week," (Doc. 51-9 at ¶ 5; Doc. 51-10 at ¶¶ 4, 6), but cannot obtain IHCBS, "because such services are unavailable in her community," (SAC at ¶ 94; Class Action Memo at 6). (SAC at ¶¶ 92-96; *see also* Class Action Memo at 6; Doc. 51-9 (Declaration Of P.B. In Support Of Plaintiffs' Motion For Class Certification); Doc. 51-10 (Supplemental Declaration of P.B.)).

C.C. is a 14-year old Medicaid recipient residing in Terrebonne Parish. C.C. is an honor student and enjoys mystery novels. C.C. has been diagnosed with multiple mental disorders, and has experienced psychiatric crises. "Despite having multiple mental illnesses, experiencing psychiatric crises, and being recommended by her providers for IHCBS, C.C. has never received these needed services." (Class Action

Memo at 7; *see also* SAC at ¶ 99). She has been institutionalized 3 times at psychiatric facilities since 2013. Her most recent institutionalization (in late 2018) lasted more than 100 days. Between institutionalizations, C.C. receives only infrequent outpatient counseling and medication management. Lacking recommended IHCBS, C.C. continues to deteriorate. (SAC at ¶¶ 97-102; Class Action Memo at 7; Doc. 51-11 (Declaration Of P.C. In Support Of Plaintiffs' Motion For Class Certification); Doc. 51-12 (Supplemental Declaration of P.C.)).

D.D. is a 14-year old Medicaid recipient residing in Rapides Parish. D.D. is inquisitive, and enjoys drawing and playing video games. D.D. has been diagnosed with multiple mental disorders, as well as a congenital heart defect requiring a pacemaker. He has experienced multiple psychiatric crises, manifested by self-harm and suicidal and homicidal ideations. "D.D.'s current behavioral health provider has created a crisis recovery plan for him," but D.D. cannot obtain IHCBS because LDH does not make these services available. (Doc 51-14 at ¶ 7; *see also* SAC at ¶ 109;). Further, D.D. has even been refused inpatient psychiatric treatment due to liability concerns related to his pacemaker. Lacking alternatives, in times of crisis D.D. and his family are forced to seek emergency room care and employ various at home interventions, which amount to calling his sister (who lives in Florida), his grandmother, his outpatient therapist, or 911. D.D. has been expelled from school due to behavioral concerns related to his mental disorders. (SAC at ¶¶ 103-110; Class Action Memo at 8; Doc. 51-13 (Declaration Of P.D. In Support Of Plaintiffs' Motion For Class Certification); Doc. 51-14 (Supplemental Declaration of P.D.)).

E.E. is a 14-year old Medicaid recipient residing in Pointe Coupee Parish. E.E. enjoys painting, drawing, reading, and sports, and looks forward to traveling the world. E.E. has been diagnosed with multiple mental health disorders, exhibited by physical aggression and threatening behaviors towards his family, teachers, peers, and self. "Despite having multiple mental health diagnoses, experiencing multiple and recurrent psychiatric crises, and being recommended by his providers for IHCBS, E.E. has never received crisis services, intensive care coordination, or behavioral supports to meet his needs." (Class Action Memo at 9; *see also* SAC at ¶ 113). E.E. has been admitted under physician orders to psychiatric institutions 7 times since 2013, spending on average 8-10 days in the institution before he is discharged. Between institutionalizations, E.E. receives only infrequent counseling, and occasional medication and case management, and his condition continues to deteriorate. (*See id.* at ¶¶ 111-118; Class Action Memo at 9; Doc. 51-15 (Declaration Of P.E. In Support Of Plaintiffs' Motion For Class Certification); Doc. 51-16 (Supplemental Declaration of P.E.)).

F.F. is a nine-year-old Medicaid recipient living in Orleans Parish. She loves to color and draw and is currently being tested for placement in her school's gifted program. F.F. has been diagnosed with multiple mental health disorders, and experiences increasingly frequent psychiatric crises, manifested by defiance and self-destructive behaviors, including suicidal ideations. Recently, F.F. began reporting that she hears voices and sees visions. "Despite having multiple mental health diagnoses, experiencing multiple and increasingly frequent psychiatric crises, and

being recommended for additional, more intensive, and coordinated IHCBS, F.F. has never received the needed services." (Class Action Memo at 9; *see also* SAC at ¶ 121). Instead, in the event of a crisis, F.F.'s mother has been advised to call 911 or take F.F. to the emergency room. F.F.'s condition continues to deteriorate, and she is frequently disciplined for behavioral infractions at school. She has been twice admitted to psychiatric institutions since May 2019. Each institutionalization extended at least seven days; one psychiatric facility was almost 300 miles from her home. (SAC at ¶¶ 119-124; Class Action Memo at 9; Doc. 51-17 (Declaration Of P.F. In Support Of Plaintiffs' Motion For Class Certification); Doc. 51-18 (Supplemental Declaration of P.F.)).

### III.    PROCEDURAL HISTORY

Plaintiffs filed their original class action complaint on November 7, 2019. (Doc. 1). Based on the foregoing allegations, Plaintiffs contend that Defendants have violated the Medicaid Act's EPSDT Services provisions discussed above, and the Medicaid Act's requirement that all ESPDT Services be provided with "reasonable promptness," 42 U.S.C. § 1396a(a)(8). (SAC Counts I, II). Plaintiffs further contend that Defendants' failure to provide IHCBS violates their right to mental health treatment in the most integrated setting appropriate, under the ADA and RA. (SAC Counts III, IV). Plaintiffs seek certification of an injunction class under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(2); a declaration that Defendants have violated the Medicaid Act, the ADA, and the RA; and a permanent injunction requiring Defendants to "establish and implement policies, procedures, and practices to ensure the provision of intensive home and community-based mental health

services to Plaintiffs and the Class … in the most integrated setting appropriate to their needs." (Doc. 1 at ¶ 137; *see also* SAC at ¶ 148).

On November 27, 2019, Plaintiffs' filed their First Amended Complaint, adding Plaintiff F.F. (Doc. 15).

On June 23, 2020, the Court granted in part Defendants' Motion for More Definite Statement Pursuant to Rule 12(e), and ordered Plaintiffs to supplement their First Amended Complaint to provide "additional information regarding specific discriminatory acts allegedly committed by Defendants." (Doc. 43 at 1-2). Consistent with the Court's June 23 Order, Plaintiffs filed the operative SAC on July 7, 2020. (Doc. 48).

On July 21, 2020, Defendants filed their Answer to Plaintiffs' SAC. (Doc. 49).

On September 28, 2020, Plaintiffs' filed the instant Renewed Motion for Class Certification.[8] (Doc. 51). Defendants oppose Plaintiffs' Motion. (Doc. 52).

## IV.    LAW AND ANALYSIS

### A. Standard

A federal court may certify a class for litigation if it determines, after a "rigorous analysis," that the plaintiffs seeking class certification have met all of the prerequisites of Rule 23. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572

---

[8] Plaintiffs filed their original Motion for Class Certification on November 7, 2019, alongside their original Complaint. (Doc. 2). On August 31, 2020, the Court terminated Plaintiffs' original Motion for Class Certification, and ordered Plaintiffs to file a renewed Motion for Class Certification based on the allegations stated in the SAC. (Doc. 50).

F.3d 221, 228 (5th Cir. 2009) (citing authorities).

To obtain class certification under Rule 23, Plaintiff must satisfy all requirements of subpart (a) and one of the requirements of subpart (b). Fed. R. Civ. P. 23. The "threshold requirements" of subpart (a) are:

> (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quotation marks and alterations omitted). Plaintiffs here seek certification of an injunction case under Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Ultimately, "Plaintiffs' burden is not to prove the elements of their claim, but to show that those elements are capable of proof through evidence that is common to the class." *S.R., by & through Rosenbauer v. Pennsylvania Dep't of Hum. Servs.*, 325 F.R.D. 103, 107 (M.D. Pa. 2018) (quotation marks omitted)); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) ("Although we have cautioned that a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are

satisfied." (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

## B. Discussion

Plaintiffs seek certification of a class consisting of:

> All Medicaid-eligible youth under the age of 21 in the State of Louisiana who are diagnosed with a mental illness or condition, not attributable to an intellectual or developmental disability, and who are eligible for, but not receiving, intensive home and community based (mental health) services.

(Doc. 51).

Defendants contest every aspect of Plaintiffs' request for class certification, contending that Plaintiffs cannot satisfy any of the express requirements of Rule 23(a) and Rule 23(b)(2), and, further, that Plaintiffs' proposed class fails because it is not "ascertainable." (Doc. 52 at 1). The Court considers each requirement in turn.

### i. Plaintiffs' Proposed Class Is Ascertainable As Amended

At the outset, Defendants complain that Plaintiffs' proposed class is not "ascertainable." "The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (footnote omitted).

> An identifiable class exists if its members can be ascertained by reference to objective criteria. The order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against). A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class.

*Plaza 22, LLC v. Waste Mgmt. of Louisiana, LLC*, No. 13-cv-618, 2015 WL 1120320, at *3 (M.D. La. Mar. 12, 2015) (Dick, J.) (quotation marks and footnotes omitted).

15

Defendants complain of two aspects of Plaintiffs' proposed class definition: first, that "Plaintiffs' reference to IHCBS [intensive home and community based (mental health) services] is vague and does not clearly signal to Defendants the type of services that are allegedly lacking under the EPSDT mandate"; and, second, that "Plaintiffs' proposed class definition is not an objective measure that could gauge the persons included within the class" because each class member's eligibility "will turn on the individualized circumstances of each putative class member, such as the recipient's particular mental health condition(s), environment, and the recommendations of her physicians or licensed mental health professionals." (Doc. 52 at 6-22).

Defendants' first objection—that they cannot identify the proposed class because they do not understand the meaning of "intensive home and community based (mental health) services"—is baseless. Defendants are acutely aware of the nature and scope of interventions encompassed by Plaintiffs' proposed class definition, as evidenced by the Legislative Auditor's recent findings regarding SBH Services available to Louisiana's Medicaid recipients, and LDH's responses to those findings.

Defendants' second objection—that there is no uniform standard for determining class membership because "eligibility for a specific EPSDT services [sic] will turn on the individualized circumstances of each putative class member"— deserves closer attention. This objection also would be baseless *if* the class was limited to children whose physicians have *already recommended* IHCBS. For these

16

children, the individualized analysis is complete, and has resulted in a determination that such interventions are "medically necessary," and therefore required under the Medicaid Act. *See* 42 U.S.C. § 1396d(a)(13); *see O.B.*, 2016 WL 2866132, at *2 ("[A]pproval for EPSDT services requires, as a matter of state law, an HFS determination that the services are medically necessary. Thus, any 'individualized determinations' required in this case have already been made—by definition, the class would consist only of children who are not receiving services that have been prescribed as 'medically necessary' and which the state must therefore provide under the EPSDT program."); *see also N.B.*, 26 F. Supp. 3d at 767 (same).

Here, however, Plaintiffs proposed class is not limited to children whose providers have already recommended IHCBS; it includes *all* children "*eligible* for" such services. The word "eligible" is the problem, as it potentially opens the class to children that have not yet undergone individualized screening and diagnosis, and have not yet obtained a physician's recommendation to IHCBS. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "eligible" as "Fit and proper to be selected or to receive a benefit; legally qualified for an office, privilege, or status."). Clearly, the Court cannot make determinations of medical necessity in the first instance, and therefore shall exercise its discretion to limit Plaintiffs' proposed class definition accordingly. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.").

Finally, although not raised by Defendants, one additional aspect of Plaintiffs'

proposed class definition must be corrected. As written, Plaintiffs' class consists only of members that are "not receiving" required IHCBS. This limitation, however, creates an impermissible "fail safe" class.[9]  Here, again, the Court shall exercise its discretion to revise Plaintiffs' proposed class definition. *In re Monumental Life Ins.*

---

[9] The U.S. District Court for the Northern District of Illinois addressed this issue specifically, in its order certifying a class to pursue identical claims against the Illinois Department of Healthcare and Family Services ("HFS").

> As discussed further in the context of the commonality requirement, the question whether the state provides the required services is a common question of fact that goes to the state's liability. That question of liability cannot be used to define the class; this would result in a "fail-safe" class defined in such a way that each class member "either wins, or by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 825 (7th Cir. 2012). As applicable here, a plaintiff who was a member of the class by virtue of establishing that she was not receiving services would succeed on the merits, but if the state proved she was receiving the services, she would not be bound by the judgment because she would not be part of the class. Moreover, to fold into the class definition the question of which children are receiving the required services is, as the Director argues, to invite individualized, fact-specific inquiry into the identification of the class. The plaintiffs claim that the state has a policy of not covering home and community-based care beyond weekly medication management and counseling sessions, and that this level of care fails to satisfy the EPSDT mandate. Presumably, the state will contend that the services it covers satisfy the mandate and that it is not obligated to provide what the plaintiffs seek; this is the core of the dispute. Whether the state provides EPSDT-compliant services as a matter of policy is the ultimate liability question, and therefore, all the children eligible for the services must be included in the class.

> Thus, it is enough to say that the class consists of the subset of those children who have been found by their LPHAs to need in-home or community based services. This is the model used in *Collins v. Hamilton*, 349 F.3d 371 (7th Cir. 2003). There, the plaintiffs sued to obtain coverage for treatment in psychiatric residential treatment facilities ("PRTF"), but the class definition was not limited to patients for whom such care was being denied. The class consisted of "Medicaid-eligible children under age twenty-one who require mental health services for which Federal Financial Participation is available." See id. at 372 n. 1. The State of Indiana was alleged to have a policy of not covering residential placement services, even when deemed medically necessary; it is therefore appropriate that the class consisted of all the patients eligible for the services. Here too, the class need only be defined to include those children who have received a diagnosis and recommendation by an appropriate provider for the home or community based services; at that point, he or she is entitled to EPSDT services. Defined in this way, the individualized determinations are complete at the time a plaintiff's membership in the class is determined.

*N.B.*, 26 F. Supp. 3d at 767-68. The same reasoning applies here.

*Co.*, 365 F.3d at 414.

Synthesizing the discussion above, the following class definition best comports

with the nature of the Plaintiffs' claims and the governing legal standards for defining

and certifying a class:

> All Medicaid-eligible youth under the age of 21 in the State of Louisiana
> (1) who have been diagnosed with a mental health or behavioral
> disorder, not attributable to an intellectual or developmental disability,
> and (2) for whom a licensed practitioner of the healing arts has
> recommended intensive home- and community- based services to correct
> or ameliorate their disorders.

### ii.  Numerosity

Next, Defendants complain that Plaintiffs have failed to show that their

proposed class is sufficiently numerous to warrant certification. (Doc. 52 at 8-12).

Numerosity is satisfied when "the class is so numerous that joinder of all members is

impracticable." Fed R. Civ. P. 23(a)(1). "There is no magic number for determining

when a class is sufficiently numerous," *Pitts v. Greenstein*, No. 10-cv-635, 2011 WL

2193398, at *3 (M.D. La. June 6, 2011) (Brady, J.), though "classes containing more

than 40 members are generally large enough to warrant certification." *Lewis v. Cain*,

324 F.R.D. 159, 168 (M.D. La. 2018) (Dick, J.) (citing cases). "The primary

consideration for courts is the practicality of joining the members of a proposed class."

*Pitts*, 2011 WL 2193398, at *3.

Plaintiffs posit that the proposed class consists of as many as 47,500 youth,

who are spread across the state, and who would otherwise lack financial resources to

independently challenge LDH's failure to provide IHCBS. (Doc. 51-2 at 11-14).

Plaintiffs arrive at their estimate by first determining what percentage of Louisiana's

19

Medicaid recipients are children and youths between the ages of 6 and 20—using data from LDH's Medicaid 2018 Annual Report (the "2018 Report")[10]—and then applying that percentage to the number of Louisiana Medicaid recipients covered for SBH Services *only*—again based on the 2018 Report. (*Id.* at 11-12 & n.7).

Defendants object, contending that Plaintiffs' evidence fails because even if LDH's *own* data "alerts" the Court to the number of children recommended for SBH Services, it does *not* tell the Court the number of children that are recommended for SBH Services, "but not receiving" such services. (Doc. 52 at 10-11).

Again, Defendants' objection is baseless, this time because it ignores the central thrust of Plaintiffs' complaint. As stated, Plaintiffs core allegation is that LDH maintains a policy of *not* providing IHCBS, and therefore *none* of Louisiana's Medicaid-eligible children recommended for IHCBS receive such services. Subtracting *zero* children *receiving* SBH Services from 47,500 children *requiring* SBH Services yields a class of 47,500 children.[11]

In sum, the Court is satisfied by Plaintiffs' proof that the proposed class may include as many as 47,500 children.[12] It would be all but impossible to join 47,500 cases were they to be filed individually. Additionally, Plaintiffs have put forth

---

[10] The LDH 2018 Medicaid Report is available at: ldh.la.gov/assets/medicaid/AnnualReports/Medicai dAnnualReport2018_v4.pdf.

[11] In a sense, Plaintiffs invited Defendants' objection by proposing a class composed of children that are "not receiving" required IHCBS. For the reasons discussed, the Court has eliminated this limitation from the class definition. Viewed in this light, the Court's revised class definition effectively moots Defendants' objection.

[12] Remarkably, Plaintiffs may have understated the size of the class, given the Legislative Auditor's observation that in 2015, 54,563 Louisiana children requiring mental health services were denied interventions. LLA February 2018 Report, *supra* n.3, at 12.

evidence that class members are dispersed throughout the state, and are without means to pursue individual cases in the event a class is not certified. Numerosity is satisfied. *E.g., Pitts*, 2011 WL 2193398, at *4 (certifying class of approximately 3,300 Medicaid recipients not receiving required services where the class members were "geographically dispersed" and lacked "sufficient financial resources to bring suit individually").

### iii. Commonality

Next, Defendants complain that Plaintiffs cannot show commonality. The test for commonality "is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)). Critically, "commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *M.D. ex rel. Stukenberg*, 675 F.3d at 839-840 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)).

> [Putative class members'] claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Dukes*, 564 U.S. at 350.

Here, Plaintiffs' core claim is that they are Medicaid recipients with diagnosed mental health disorders that have been injured by Defendants' policy of failing to provide IHCBS, such that their disorders are untreated and, in times of crisis, require

care from emergency rooms and psychiatric facilities. As noted in Plaintiffs' Class Action Memo, resolution of this claim will require the Court to consider multiple common questions of fact and law applicable to the proposed class, including (a) what mental health interventions LDH currently provides to Louisiana's Medicaid-eligible children diagnosed with mental health disorders; (b) whether these interventions are available to all qualified children; (c) whether the IHCBS Plaintiffs seek are required by the EPSDT provisions of the Medicaid Act; (d) if such interventions are required, whether LDH provides such interventions; (e) if such interventions are required, whether emergency room care and/or psychiatric institutionalization are appropriate substitutes for such interventions; and (f) if Defendants are failing to provide IHCBS under the Medicaid Act, whether that failure is also a prohibited form of discrimination on the basis of disability under the ADA and RA. (*See* Doc. 51-2 at 15). Each of these questions is capable of classwide resolution, and a "determination of its truth or falsity will resolve an issue that is central to the validity of each one of [Plaintiffs'] claims in one stroke." *Dukes*, 564 U.S. at 350. Commonality is satisfied.

Still, Defendants object, arguing that that commonality is defeated because (again) "each proposed class member is factually distinctive and each EPSDT service criteria differs based on medical necessity," and, thus, "the merits of each potential class member's claims will depend on an individualized inquiry regarding the alleged missing services." (Doc. 52 at 13). The Court has already rejected this objection in the context of its analysis of whether the proposed class is ascertainable. Suffice for now to say that Defendants' objection fails because it is founded on the misplaced notion

that class relief will require individualized, judicially monitored, mental health assessments to determine class members' eligibility for EPSDT services, when, in fact, such assessments have already been performed by the class members' physicians.[13]

In this case, as in other class actions challenging the State's failure to provide medically necessary mental health interventions, the central, common issue is whether there exists a system-wide failure to provide interventions that are prescribed and, therefore, required of LDH under the Medicaid Act's EPSDT mandate. *E.g.*, *N.B.*, 26 F. Supp. 3d at 772–73 (discussing commonality requirement and rejecting the State's argument that a need for individualized medical necessity determinations defeated commonality); *S.R., by & through Rosenbauer*, 325 F.R.D. at 109 (same); *M. H. v. Berry*, No. 1:15-CV-1427-TWT, 2017 WL 2570262, at *5 (N.D.

---

[13] Defendants rely principally on *AW v. Magill*, No. 17-cv-1346, 2018 WL 6680941 (D.S.C. Aug. 21, 2018), to support their argument that commonality is lacking here. In that case, involuntary admittees at a state psychiatric facility challenged South Carolina's failure "to develop sufficient community mental health services that would allow [them] to be discharged" safely to a community-based setting. 2018 WL 6680941, at *1. The plaintiffs alleged that South Carolina's failure to provide such services violated the anti-discrimination provisions of the ADA and the RA, and sought to represent a class consisting of "All current and future adult, non-forensic residents of Bryan Hospital who, with appropriate supports and services, would now or in the future be able to live in an integrated community setting and who do not oppose living in an integrated community setting." *Id.* The U.S. District Court for the District of South Carolina denied certification for multiple reasons, including that the proposed common injury—"unnecessary institutionalization"—depended on "factually unique" circumstances of each proposed class member, and therefore was "not sufficient for a single proceeding to produce common answers that could resolve classwide issues." *Id.* at *3.

    *AW* is plainly distinguishable on multiple levels. Most obvious, *AW* did not involve a Medicaid Act claim, or any allegations whatsoever that the state maintained a uniform policy of failing to provide services and interventions required by the Medicaid Act's EPSDT mandate. As to the commonality requirement, specifically, the plaintiffs defined class membership in such a way as to make individualized judicial inquiries unavoidable, in order to determine (1) what "appropriate supports and services" would allow them to be discharged safely to their communities; *and* (2) whether they did "not oppose living in an integrated community setting." Here, by contrast, the individualized inquiries have already occurred and the relevant criteria for class membership has already been determined (for reasons explained above), and plaintiffs' class is not limited according to class members' subjective preferences for IHCBS.

Ga. June 14, 2017) (same); *cf. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) ("class relief is consistent with the need for case-by-case adjudication … so long as the membership of the class is limited to those who meet" objective requirements set forth in the Social Security Act). That is why, as discussed, the class should consist of all children whose physicians have recommended IHCBS. According to Plaintiffs, LDH does not provide *any* IHCBS, opting instead to provide only basic outpatient counseling and medication management. If so, then every plaintiff has suffered the same injury as a result of LDH's general policy—even if the recommended mental health interventions vary among class members. This issue is resolvable on a class-wide basis.

### iv. Typicality

Defendants also object that Plaintiffs cannot show that their claims or defenses are typical of the claims or defenses of the class. "[T]he test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mullen*, 186 F.3d at 625 (quoting *Lightbourn,* 118 F.3d at 426).

> Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification. This nexus exists if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.

*Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quotation marks, alterations, and citations omitted); *accord Lightbourn,* 118 F.3d at 426.

The Court finds that there is sufficient congruence between the Named

Plaintiffs' claims and those of the proposed class. The Named Plaintiffs are all Medicaid recipients diagnosed with mental disorders, alleged to have been denied IHCBS due to LDH's failure to make such services available, in violation of Medicaid's EPSDT requirement, and the ADA's and RA's integration mandates. Plaintiffs seek remedies that would benefit all class members—specifically, declaratory and injunctive relief requiring LDH to fulfill its federal mandate to provide IHCBS to Plaintiffs and the Class. Typicality is satisfied. *E.g.*, *N.B.*, 26 F. Supp. 3d at 771 (typicality satisfied where the named plaintiffs "all suffer from mental illness and/or behavioral or emotional disorders" and "are alleged to have been denied access to intensive community-based services based on the failure of the Department to make them available, in violation of EPSDT and the integration mandate"); *see also S.R., by & through Rosenbauer*, 325 F.R.D. at 110-11; *M.H.*, 2017 WL 2570262, at *6.

Yet again, Defendants object. And again, Defendants merely restate their arguments regarding each of the preceding elements, insisting that the same "lack of specificity surrounding the proposed class definition," "uncertain[ty] whether named Plaintiffs and the potential class members would benefit from the same remedial measures," and lack of "competent evidence … to support their contention that a common class of 47,500 similarly situated children even exists in Louisiana" make it impossible to determine whether "named Plaintiffs' claims and the putative class members' claims are typical and arise from a similar course of conduct." (Doc. 52 at 16). The Court has already addressed these objections, and will not do so again.

25

### v. Adequacy

Finally, Defendants object that Plaintiffs cannot fairly and adequately protect the interests of the class. Adequacy of representation is determined by two factors: "whether and to what extent the class representatives have common and/or antagonistic interests to the remaining members of the class," and "whether the named plaintiffs have retained qualified counsel." *Pitts*, 2011 WL 2193398, at *6 (citations omitted).

Defendants concede that Plaintiffs have retained qualified counsel. The Court agrees that Plaintiffs' counsel are qualified to represent Plaintiffs' competently and zealously throughout these proceedings.

Still, Defendants complain that "[s]ince the proposed class is not succinctly defined or ascertainable, it is unclear whether Plaintiffs have the same interest and suffer the same injury as the class members." (Doc. 52 at 17-18 (quotation marks omitted)). Here, again, Defendants have merely recycled their preceding objections, which have been addressed. Further, as is by now clear, Plaintiffs and the class they seek to represent are united by a common interest in obtaining mental health interventions that are rightfully theirs under the Medicaid Act's EPSDT mandate, and the ADA's and RA's integration mandates. The remedies Plaintiffs seek would unquestionably benefit all class members.

In sum, there is no foreseeable conflict between the Named Plaintiffs' interests and those of the class, and Plaintiffs' counsel are appropriately qualified and experienced. Adequacy is satisfied.

### vi. Rule 23(b)(2)

Having found that Plaintiffs satisfy each requirement of Rule 23(a), the Court moves to Rule 23(b). Plaintiffs seek certification of an injunction class under Rule 23(b)(2), which provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) certification is available if three requirements are satisfied: (1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific." *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (quotation marks omitted). Further, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes, Inc.*, 564 U.S. at 360.

Here, again, the requirements for certification are met. First, as has been explained, LDH's alleged policy of *not* providing IHCBS harms all class members essentially the same way: they are denied their rightful mental health care in violation of the Medicaid Acts' EPSDT mandate, and the ADA's and RA's integration mandates.

Second, Plaintiffs seek only declaratory and injunctive relief. Thus, there is no question that such relief predominates over monetary relief.

Finally, the injunctive relief Plaintiffs seek is specific, and can be fashioned in

the form of a single injunction that would provide relief to each member of the class. Success on Plaintiffs' claims would necessarily require LDH to modify its policies to properly implement the Medicaid Act's EPSDT mandate. By their very nature, such policy changes would be generally applicable, and therefore would benefit all class members. Stated differently, "[t]he only possible remedy is the statewide implementation of the heretofore unfulfilled requirements of [the Medicaid Act, the ADA, and the RA], likely through new regulations that provide the services [that] have been unavailable on a system-wide basis." *N.B.*, 26 F. Supp. 3d at 775. Thus, Rule 23(b)(2) is satisfied. *See id.*; *see also* S*.R., by & through Rosenbauer*, 325 F.R.D. at 112 (finding that Rule 23(b)(2) was satisfied where plaintiffs sought "*systemic* changes within the DHS and Child Welfare system that would provide for more placements, more services, prompt placement determinations, and fair allocation of the placements for children with and without mental health disabilities."); *M. H.*, 2017 WL 2570262, at *7 (same).[14]

Defendants raise two objections to certification of an injunction class under Rule 23(b)(2). First, they contend "that injunctive relief is [not] appropriate because Defendants have never refused to act and actively sought to address Plaintiffs' concerns." (Doc. 52 at 19). In support of this objection, Defendants cite a pre-suit meeting with Plaintiffs' counsel where Defendants allegedly offered "to address

---

[14] Of course, should Plaintiffs prevail in their claims, they must propose, and the Court must approve, a specific injunction that gives fair notice to Defendants regarding violative conduct. While constructing such an injunction may be inherently difficult, it is not impossible, and therefore not a basis for denying certification. *See N.B.*, 26 F. Supp. 3d at 775; *S.R., by & through Rosenbauer*, 325 F.R.D. at 112;.

Plaintiffs' concerns," but were unable to do so "because Plaintiffs' withheld the relevant specifics," and instead offered merely "a general concern about the absence of home and community based mental health services, which included crisis, in some areas of the state for the EPSDT population." (Doc. 52 at 18-19). Second, Defendants complain that the injunctive relief Plaintiffs seek is not specific, necessitates "a patient-specific inquiry," and "would not have the blanket effect that Rule 23(b)(2) requires," essentially parroting the same unavailing objections advanced throughout their opposition. (*Id.* at 20-22).

Defendants first objection fails on multiple levels. As an initial matter, Defendants' feigned ignorance of the nature and scope of Plaintiffs' claims cannot be credited, given the Legislative Auditor's findings that "Louisiana does ***not*** always provide Medicaid recipients with comprehensive and appropriate [SBH Services]"[15] because "***adequate community-based SBH services do not exist***."[16] Tellingly, Defendants have not provided any evidence to show that they have addressed the critical shortage of SBH Services available to children across the state.

Moreover, and in any event, Defendants' objection fails because it is based on a fundamental misconstruction of Plaintiffs' claims. Again, Plaintiffs' core allegation is that IHCBS *cannot* be provided to *any* class member because LDH maintains a blanket policy of *not* providing such services. This classwide allegation supersedes any individual claim that LDH has failed to provide specific community based

---

[15] LLA February 2018 Report, supra n.3, at 3 (emphasis added).
[16] LLA February 2018 Report, *supra* n.3, at 8 (emphasis added).

interventions to a specific child, and can only be remedied by classwide relief, not one-off "fixes" for the Named Plaintiffs.

Defendants' second objection fails for reasons already explained: Should Plaintiffs prevail, LDH will necessarily be required to modify its policies to properly implement the Medicaid Act's EPSDT mandate. Such policy changes would be generally applicable—*not* based on "a patient-specific inquiry" (because all such individualized determinations required in this case have already been made)—and would benefit all class members. *See N.B.*, 26 F. Supp. 3d at 775 (rejecting defendant's argument that "highly individualized determinations" of medical necessity defeated certification of an injunction class to pursue claims that the State failed to provide prescribed mental health interventions required the EPSDT mandate).

## V.    CONCLUSION

Plaintiffs have demonstrated that the proposed class meets all requirements of Rule 23(a) and Rule 23(b)(2). Further, judicial economy is served by certification of the class. The evidence needed to prove the systemic failures and discriminatory impact of Defendants' policies will be substantially the same for all putative class members. Class certification allows for both sides to conserve resources and efficiently resolve the factual and legal issues presented by the class.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Renewed Motion For Class Certification (Doc. 51) is **GRANTED**.

a. The class is hereby defined as follows:

All Medicaid-eligible youth under the age of 21 in the State of Louisiana

(1) who have been diagnosed with a mental health or behavioral disorder, not attributable to an intellectual or developmental disability, and (2) for whom a licensed practitioner of the healing arts has recommended intensive home- and community- based services to correct or ameliorate their disorders.

b. Named Plaintiffs, by and through their legal representatives, are hereby designated as the class representatives.

c. Plaintiffs' counsel are hereby designated as class counsel.

**IT IS FURTHER ORDERED** that pursuant to Rule 23(c)(2)(A), within 30 days of the date of this Order, Plaintiffs shall file a motion for approval of their proposed form of class notice and their notice program ("Notice Motion"). If the Notice Motion is opposed by any party, that party shall file a brief in opposition to the Notice Motion no later than 14 days after the filing of the Notice Motion.

**IT IS FURTHER ORDERED** that this matter is referred to the Magistrate Judge for entry of a Scheduling Order.

Baton Rouge, Louisiana, this 25th day of May, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

31